GEORGE LEARY et al., Appellants, *v*, THE CITY OF NEW YORK, Respondent.

Argued January 19, 1937; decided March 16, 1937.

*Ferdinand I. Haber* for appellants. Payment of the five installments of the assessment which was a lien of record on one Nassau property discharged that property from such lien and no further claim of the city of New York for the assessment could subsequently attach to the property because it was not subject to the jurisdiction of the city of New York. (*Toch* v. *City of New York,* 141 Misc. Rep. 70; *Buckhout* v. *City of New York,* 176 N. Y. 363; *Upland Realty Co.* v. *City of New York,* 99 Misc. Rep. 264; *People* v. *City of New York,* 120 Misc. Rep. 247.) The legislative construction of the earlier boundary statute should be accepted. The line established by the earlier statute was intended to be fixed and established in accordance with the description given in the later statute. (*City of New York* v. *Village of Lawrence,* 250 N. Y. 429; *People ex rel. Champlin* v. *Gray,* 185 N. Y. 196; *People ex rel. Mutual Life Ins. Co.* v. *Board of Supervisors,* 16 N. Y. 424; *City of Oakland* v. *Oakland Water Front Co.,* 118 Cal. 160.) The boundary law of 1928 did not establish a new line but described and fixed an existing one. (*Decker* v. *City of New York,* 216 App. Div. 334; 245 N. Y. 515; *Matter of Goldsmith,* 227 App. Div. 669; *Island Park Associates, Inc.,* v. *O'Donohue Park Corp.,* 254 N. Y. 523; *City of New York* v. *Village of Lawrence,* 225 App. Div. 1.)

*Paul Windels, Corporation Counsel* (*Laurence J. Rittenband* and *Oscar S. Cox* of counsel), for respondent. The

assessment for local improvements was validly levied on plaintiffs' property since the property was located in the county of Queens before the boundary law of 1928 (L. 1928, ch. 802) was passed changing the old boundary line. (*City of New York* v. *Village of Lawrence*, 250 N. Y. 429; *Leary* v. *Village of Lawrence*, 233 App. Div. 771.) The legislative declaration in chapter 802, Laws of 1928, that the boundary line fixed by the earlier statute is to be construed as being fixed and established in accordance with the description given in the later statute is not binding on the courts. (*City of New York* v. *Village of Lawrence*, 250 N. Y. 429; *People ex rel. Mutual Life Ins. Co.* v. *Board of Supervisors*, 16 N. Y. 424; *People ex rel. McDonald* v. *Keeler*, 99 N. Y. 463; *People ex rel. Champlin* v. *Gray*, 185 N. Y. 196; *City of Oakland* v. *Oakland Water Front Co.*, 118 Cal. 160; *People ex rel. James* v. *Gilon*, 126 N. Y. 640; *Matter of Cruger*, 84 N. Y. 619; *People ex rel. Architects' Offices, Inc.*, v. *Ormond*, 201 App. Div. 787; 234 N. Y. 549; *People ex rel. Weiser* v. *Tucker*, 220 N. Y. 594; *Matter of Munn*, 165 N. Y. 149; *People ex rel. Crane* v. *Hahlo*, 228 N. Y. 309; 258 U. S. 142.) The city of New York did not lose its prior claim or lien on plaintiffs' property after the boundary law was passed transferring plaintiffs' property to the county of Nassau. (*Buckhout* v. *City of New York*, 176 N. Y. 363.)

HUBBS, J. By an amendment of the charter of the city of New York (Laws of 1901, ch. 466) the boundary line between the county of Queens, a part of the city of New York, and the county of Nassau was defined. Disputes arose as to the exact physical location on the ground of the line. By chapter 802 of the Laws of 1928 the Legislature established the line between the city and the county of Nassau with mathematical precision. It set out the line in detail by a series of courses with dimensions and directions. When that line was laid out on the ground the effect was to transfer and annex to the county

of Nassau a strip of land about one mile long, varying in width from 100 to 400 feet. Prior thereto that strip of land had been supposed to be in Queens county, a part of the city of New York, and it was so alleged in the complaint. Appellants owned land partly upon that strip and partly in the city. Their land had been assessed by the city for local improvements by an assessment which became a lien upon October 25, 1927. The so-called " Boundary Law " (Laws of 1928, ch. 802) became effective on April 5, 1928, over five months after the assessment became a lien on the lands in question.

This action is to cancel such tax lien on the lands in question upon the ground that the tax lien constitutes an illegal cloud upon appellants' title. Another question is also involved, which will be referred to later. The first question is whether prior to April 5, 1928, the date when the " Boundary Law " became effective, the strip of land in question was within Nassau county or within Queens county, a part of the city of New York. Upon that issue the appellants had the burden of proof. " Heed must be given to the burden of proof, at least when other tests are lacking. In this action to establish ownership, petitioners must recover, if at all, on the strength of their own title." (*Shapleigh* v. *Mier*, 299 U. S. 468, 475.)

It is presumed that the tax was properly and legally assessed. (*People ex rel. Jamaica Water Supply Co.* v. *State Board of Tax Commissioners*, 196 N. Y. 39; *People ex rel. Postal Telegraph-Cable Co.* v. *State Board of Tax Commissioners*, 224 N. Y. 167, 180.)

At the trial the plaintiffs rested upon the " Boundary Law " and did not introduce any evidence. The city introduced the city tax map, which shows the strip of land in question to be within Queens county and the city. It also introduced the record of another action in which the same parties were plaintiffs in a suit against the village of Lawrence, wherein they asserted that prior to the enactment of the " Boundary Law " in 1928, the

strip of land in question was located within the county of Queens and the city of New York. The introduction of the city map in evidence created a presumption in favor of the city's contention that prior to the enactment of the " Boundary Law " the strip of land was within the city. The map was received in evidence by consent and plaintiffs' attorney stipulated that it determined the line as defined by chapter 466 of the Laws of 1901. (Jones on The Law of Evidence, § 307.)

In that condition of the record the trial court decided in favor of the city that the strip of land prior to April 5, 1928, was within the county of Queens and a part of the city, and that, therefore, the tax was properly assessed.

Appellants insist that such decision was erroneous because the Legislature recited in the act (Laws of 1928, ch. 802) : " It is hereby declared to have been the intention of the legislature of the state of New York in heretofore establishing the boundary line between the city of New York and the town of Hempstead to fix and establish the same in accordance with the foregoing description."

The foregoing description refers to the new line established by the statute. It is urged by appellants that the above declaration of the Legislature establishes that the line as defined in chapter 466 of the Laws of 1901, was intended to be the same line as established by chapter 802 of the Laws of 1928, and that the strip of land had in fact always been in Nassau county and never in the city of New York, and, therefore, that the assessment was void. We are unable to agree with such contention. In the case of City of New York v. Village of Lawrence (250 N. Y. 429), involving this same strip of land, we decided that the declaration of the Legislature was not binding on the courts. The opinion in that case indicates quite clearly that we understood that the " Boundary Law " did more than clarify the description of the line

in question; that it constituted a new boundary line which had the effect of annexing to Nassau county the strip in question. In fact, the statute, referring to that strip of land, reads that the territory is " hereby annexed to and shall be part of the village of Lawrence," which village is within Nassau county. We are satisfied that the Special Term and the Appellate Division reached the right conclusion upon that branch of the case.

On May 20, 1932, by virtue of section 1019-a of the charter (L. 1915, ch. 598), the assessment on one of the lots in question was divided into ten annual installments. Appellants paid five installments covering the period from October 25, 1927, to October 25, 1931, inclusive. By section 1019-a, payment of installments due relieves the property assessed from the lien of the assessment until another installment falls due, when the lien automatically attaches again until that installment is paid. Appellants contend that as the land had become a part of Nassau county, the city lost all jurisdiction, and the lien which had been suspended could not again attach. The lien had attached prior to the enactment of the " Boundary Law " (April 5, 1928), and that lien survived the transfer of the land to Nassau county. The fact that the city by agreement suspended the lien does not prevent it from reasserting the lien upon failure to pay an installment. True it is that the city lost jurisdiction to assess the property after its transfer, but that fact does not prevent it from collecting a tax which constiuted a lien before the transfer. Arrangements made in regard to the lien in existence before the transfer was made, not involving the levying of a new tax or the making of a new assessment on property outside the city's jurisdiction, did not have the effect of destroying the right of the city to collect the tax.

The judgment should be affirmed, with costs.

CRANE, Ch. J., LEHMAN, O'BRIEN, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Judgment affirmed.