193 So. 710

**SAENGER REALTY CORPORATION v. GROSJEAN, Collector of Revenue.**

No. 35413.

Jan. 9, 1940.

Rehearing Denied Feb. 5, 1940.

Appeal from Nineteenth Judicial District Court, Parish of East Baton Rouge; Charles A. Holcombe, Judge.

Action by the Saenger Realty Corporation against Alice Lee Grosjean, Collector of Revenue, to recover money paid by the plaintiff to the defendant under protest as sales tax. From a judgment in favor of the plaintiff, the defendant appeals.

Lessley P. Gardiner, Atty. Gen., and E. L. Richardson, J. C. Daspit, and F. A. Blanche, Asst. Attys. Gen., for defendant, appellant.

Rosen, Kammer, Wolff & Farrar, of New Orleans, for plaintiff, appellee.

PONDER, Justice.

The plaintiff seeks to recover the sum of $62.26 and interest from the Collector of Revenue of the State of Louisiana.

This case was tried on an agreed statement of facts. The Saenger Realty Corporation, a Delaware Corporation duly qualified to do business in Louisiana, operates the Saenger Theater in New Orleans and exhibits motion picture photoplays for profit therein. The plaintiff entered into contracts with various producers and distributors of motion picture photoplays and, in pursuance of the contracts, the various distributing agencies delivered prints or films to the plaintiff to be publicly exhibited for profit at the Saenger Theater. During the month of July, 1938 the plaintiff exhibited at the Saenger Theater one of these prints or films of a photoplay entitled "Gold Diggers in Paris". Under the contract with the distributing agencies the plaintiff paid them more than $1,600 per week to exhibit the photoplay. The Cane Theater in Natchitoches paid the distributing agencies $35 to exhibit the same photoplay for two days during the same week that it was exhibited at the Saenger Theater in New Orleans. The print or film used by the plaintiff is a copy or print of the master negative owned by the producer. The print or film used at the Cane Theater in Natchitoches was identical with that used at the Saenger Theater. Quite a number of these prints or films are made from the master negative and are delivered by the producer or distributor to the exhibitors. It was a print or film of this nature that the plaintiff exhibited. The amount that is paid by the exhibitor to exhibit a photoplay is determined by the location of the theater, its appointments, the size of the town, the size of the theater, the number of other theaters and whether the photoplay has been performed in the town, city or adjacent area. A sales tax equal to or greater than the amount imposed by the Public Welfare Act was paid to the State of California upon the purchase price of the print by the producer when it was bought from an independent agency or upon the

raw stock used in the laboratory in making the print. No use tax was paid on these films or prints, as tangible personal property in any other State. The photoplay involved herein was copyrighted by the producer pursuant to the laws of the United States. This photoplay was publicly exhibited in various towns and cities in the State of Louisiana, Florida, Mississippi and Alabama prior to its exhibition at the Saenger Theater by the plaintiff and in no case were the distributors paid more than $620 per week by the exhibitor. The film or print used by the plaintiff in the exhibition of this photoplay cost the producer $105. The plaintiff paid the Collector of Revenue of the State of Louisiana the sum of $62.26, representing 1% of the amount paid by the plaintiff to the distributing agencies less 5% of 1% under protest and gave the Collector of Revenue notice of its intention to enter suit for the recovery of such sum. A copy of the form or contract used herein was filed in evidence. Upon trial the lower court rendered judgment in favor of the plaintiff and the defendant has appealed.

The plaintiff contends that under the agreed statement of facts and the contract itself that the amount paid the distributing agencies by the plaintiff was royalties on an intangible right, that is, on a limited copyright license. The defendant contends that the plaintiff leased for use prints of the copyrighted photoplay and publicly exhibited it for profit, which prints are tangible personal property as defined by Par. (*l*), Sec. 2 of Act No. 2 of 1938.

Paragraph (*l*) of Section 2 of Act No. 2 of 1938 provides:

"(*l*) 'Tangible Personal property' means and includes personal property which may be seen weighed, measured, felt or touched, or is in any other manner perceptible to the senses. The term 'tangible personal property' shall not include stocks, bonds, notes, or other obligations or securities."

Section 3 of Act No. 2 of 1938 provides: "Section 3. There is hereby levied a tax upon the sale at retail, the use, the consumption, the distribution, and the storage for use or consumption in this State, of each item or article of tangible personal property, as defined herein, and upon the lease or rental of such property, within the State of Louisiana; the levy of said tax to be as follows: * * *."

The sole question at issue is whether or not the transaction herein, for the delivery of the prints or films and the licensing of their exhibition, is taxable.

Counsel for both plaintiff and the defendant lay stress on certain words contained in the contract. We are not concerned with the wording of the contract or how it is labeled because this is not a suit between the contracting parties. If the State has the right to tax the subject matter of the contract, it could not be defeated by the label the contract was given or the words used by the contracting parties. The transaction involves the use of the films and the right or license to exhibit the photoplay for profit. Counsel for both plaintiff and defendant have cited a number of cases wherein the subject matter involved in this

case was mentioned and discussed but not with the view of determining it. Counsel for the plaintiff appears to rely mainly on the cases of Fox Film Corporation v. Doyal, 286 U.S. 123, 52 S.Ct. 546, 76 L.Ed. 1010, and Andersen v. City of New York, Pagano Inc. v. City of New York, 172 Misc. 370, 15 N.Y.S.2d 155. The cited cases did not involve issues identical with the instant case. The most that could be said with reference to the cited cases would be that the reasoning used therein is persuasive. The only case wherein the issue was identical with that in the instant case was cited by counsel for the defendant, United Artists Corporation v. Taylor, 273 N.Y. 334, 7 N.E.2d 254, 255.

In United Artists Corporation v. Taylor, supra, the Court states:

"If these contracts between appellant and the exhibitors in New York City constitute a sale within the purview of chapter 873 of the Laws of 1934 (Ex.Sess.) and Local Law No. 20 of December 5, 1934, as amended by Local Law No. 24 of December 28, 1934, the transaction, so far as the delivery of the prints and the licensing of their exhibition is effected in the territory included with New York City, is taxable. Appellant's contract with the producer provides that the distributor (appellant) purchases all the producer's right to market positive sound prints of motion pictures, that appellant will use its best efforts to market them, that it agrees that all leases or licenses to use positive copies or copies of each of the producer's photoplays shall be made separate and apart from the leases or sales of other motion pictures or photoplays, and used in no way to influence the license, lease, or sale of other motion pictures or photoplays. The subject of the transaction between the producer and this appellant, which is the same subject as the transaction between appellant and the exhibitors in New York City, is a photoplay consisting of two negatives and of complete positive copies not to exceed 150.

"Local Law No. 20 (published as Local Law No. 21), effective December 5, 1934, imposes a tax on the sale of tangible personal property and defines the term 'tangible personal property' as corporeal personal property. This Local Law No. 20 was amended to take effect December 28, 1934, by Local Law No. 24 (published as Local Law No. 25). This amendment contains this definition: '(e) The word "sale" or "selling" means any transfer of title or possession or both, exchange or barter, license to use or consume, conditional or otherwise, in any manner or by any means whatsoever for a consideration, or any agreement therefor.' Section 1(e). The transaction which is the subject of the tax under review consists of the transfer by the distributer to the exhibitor of the possession of corporeal property in the form of positive and negative prints of photoplays with the license to use or exhibit them for a specified time. The license to exhibit without the transfer of possession would be valueless. Together they are one transaction and constitute a sale within the definition of Local Law No. 24. In so far as this sale originates and is con-

summated in New York City, it is subject to the tax."

Counsel for the plaintiff contends that the decision in the case of United Artists Corporation v. Taylor, supra, has been discredited by the decisions of Howitt v. Street & Smith Publications, Inc., 251 App.Div. 461, 297 N.Y.S. 3, and Dun & Bradstreet, Inc. v. City of New York, 276 N.Y. 198, 11 N.E.2d 728. After examining these cases, we find the court did not overrule United Artists Corporation v. Taylor, supra, but differentiated it from the cases cited by the plaintiff. It would appear therefore that since the court on two occasions discussed the case of United Artists Corporation v. Taylor, supra, and in each instant differentiated the doctrine laid down therein that it was in effect an approval of that decision. Counsel for the plaintiff argues further that the doctrine laid down in United Artists Corporation v. Taylor, supra, was discarded and in effect refuted by the case of Andersen v. City of New York, Pagano v. City of New York, supra. The issue was not identical but were it identical Andersen v. City of New York, supra, decided by the Supreme Court of New York, an inferior court, could not have the effect of overruling the decision of the highest court, the Court of Appeals, in United Artists Corporation v. Taylor, supra. Under the agreed statement of facts the price the exhibitor pays to exhibit the photoplay depends on a number of circumstances. These circumstances, when boiled down, amount to the producer's or distributor's estimate of the number of persons that may patronize the exhibit.

Such being the case, the price of the right to exhibit and the use of the film is governed by the number of persons expected to patronize the exhibit. Therefore, the right to exhibit could be of no greater value than the use of the film because the price is governed by the number of persons that are expected to patronize the exhibit. In some localities the distributor receives a price for the right to exhibit the photoplay and the use of the film far less in value than the film itself. In such instances certainly it could not be said that the intangible right to exhibit was of greater value than the use of the film. In view of the nature of this transaction it would appear that the doctrine in the case of United Artists Corporation v. Taylor, supra, is sound.

For the reasons assigned, the judgment is reversed and set aside. It is ordered, adjudged and decreed that the plaintiff's demand be rejected. Plaintiff to pay all costs.

O'NIELL, C. J., dissents.