CRESCENT AMUSEMENT CO. *v.* CARSON, COMMISSIONER OF FINANCE AND TAXATION.

(*Nashville*, December Term, 1947.)

Opinion filed July 17, 1948.

CHARLES L. CORNELIUS, W. OVID COLLINS, JR., and C. WEBER TULEY, all of Nashville, W. W. GOODMAN, of Memphis, and J. L. LEVINE and M. B. FINKELSTEIN, both of Chattanooga, for appellant.

ROY H. BEELER, Attorney-General, WILLIAM F. BARRY, Solicitor General, and ALLISON B. HUMPHREYS, JR., and HARRY PHILLIPS, Assitant Attorneys-General, for appellee.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

The Tennessee Sales Tax Law (Chapter 3, Public Acts of 1947) levies a privilege tax of 2% on the gross amount paid for the rental of tangible personal property. The appellants are the operators in Tennessee of moving picture theatres. The pictures which they show are procured by renting film print from the producers of moving pictures. The picture is imprinted on this film print which is a roll of celluloid consisting on an average of about 10,000 feet. This print, through the use of moving picture machinery, projects or reproduces the picture, together with sound effects, upon the screen of the theatre. The actual cost of the film print material is between $175 and $1050, dependent upon the amount and character of material. The production of the picture imprinted thereon costs large sums, said sometimes to be as much as a million dollars, the cost being dependent upon the identity and skill of the artists who portray the characters in the picture, upon the elaborateness of the scenery in which the play is set, upon the cost of the plot or story which the picture depicts, and upon the services of many persons and technicians skilled in the art of producing the moving pictures imprinted on the film.

This picture is owned by the producer, whose ownership and the benefit to be thereby derived is protected by copyright laws. In order to fully protect this right and preserve the benefit thereof, the owner rents the film print to the operator of the picture show for a definite time and for a specified number of shows. The print is then to be returned to its owner. The rent paid is usually a specified percent of the gross receipts realized from the exhibition of the picture, but this is not always the case.

Tangible personal property is defined by the Tennessee Sales Tax Law as that "which may be seen, weighed, measured, felt, or touched, or is in any other manner perceptible to the senses."

The question for decision in this case is whether the transaction above described is, within the meaning of the Sales Tax Law, a rental of tangible personal property. If it is, then are the gross proceeds paid to the producer for the rental of the film print the measure of the tax, or is that tax to be measured by the cost of the physical material in the film print?

The Chancellor in ruling upon a demurrer sustained the contention of the Tennessee Commissioner of Finance and Taxation by holding that the transaction is taxable under the Sales Tax Law and that the correct measure of the tax is the gross amount paid to the producer for the rental of the film print.

The lessees of the film print (picture theatre operators) have appealed. They insist that the transaction described is merely the granting to them of the privilege of using and exhibiting a copyrighted production, and that this amounts only to the exercise of an intangible property right; hence, not within the meaning or intent of the Sales Tax Law, levying tax on the amount paid for the rental of tangible personal property.

It has never been determined by this Court whether or how this exact transaction is taxable under the Sales Tax Law. Appellees refer us to the New York case of *United Artists Corp.* v. *Taylor,* 273 N. Y. 334, 7 N. E. (2d) 254, 256. New York City had a sales tax law similar to ours. The exact question here arose in the administration of that New York "Local Law," and was presented for decision in the Appellate Court of New York in the case just mentioned. In holding that the tax applied to the lease of a movie film, that Court said:

"The transaction which is the subject of the tax under review consists of the transfer by the distributor to the exhibitor of the possession of corporeal property in the form of positive and negative prints of photoplays with the license to use or exhibit them for a specified time. The license to exhibit without the transfer of possession would be valueless. Together they are one transaction and constitute a sale within the definition of Local Law No. 24."

The Louisiana Sales Tax Law contains the same provisions as the Tennessee law with reference to imposing a tax upon the rent paid for the leasing of tangible personal property. In the case of *Saenger Realty Corp.* v. *Grosjean,* 194 La. 470, 193 So. 710, the Louisiana Supreme Court held that the operator of a moving picture theatre was subjected under the Louisiana act to payment of the tax on the amount paid the producer for the lease of the film print.

We are not referred to any cases where the holding is contrary to the decisions in the *New York* and *Louisiana Cases, supra,* unless it be the *Illinois Cases* cited by appellant. The Supreme Court of that State held in the case of *Burgess Co.* v. *Ames,* 359 Ill. 427, 194 N. E. 565,

that the right to reproduce a musical composition is a license rather than a transfer of tangible personal property, and in the cases of *A. B. C. Electrotype Co.* v. *Ames,* 364 Ill. 360, 4 N. E. (2d) 476, and *Adair* v. *Ames,* 364 Ill. 342, 4 N. E. (2d) 481, respectively, that Court held that printers and electrotypers are engaged in furnishing skill and labor, rather than tangible personalty in the printed matter put out.

The principle decided by the Illinois cases referred to is contrary to our holding in the case of *Saverio* v. *Carson, Commissioner,* 186 Tenn. 166, 208 S. W. (2d) 1018, 1019. The question in that case was whether our Sales Tax Law imposed a tax upon the rental paid for furnishing to customers clean diapers which were returned when soiled, cleaned again, and rented again. The contention in that case was that practically all the charge was for services rendered in laundering and delivering the diapers. We rejected this insistence and held that "the measure of the tax is the gross proceeds of the rental paid by the lessee to the lessor without any deduction for service charges, regardless of how small may be the percentage of the return on the property rented."

It seems to us that a destruction of the statute would have been effected had we reached the opposite conclusion in *Saverio* v. *Carson, supra.* There is scarcely to be found any article susceptible to sale or rent that is not the result of an idea, genius, skill and labor applied to a physical substance. A loaf of bread is the result of the skill and labor of the cook who mixed the physical ingredients and applied heat at the temperature and consistency her judgment dictated. A radio is the result of the thought of a genius, or of several such persons, combined with the skill and labor of trained technicians ap-

plied to a tangible mass of substance. An automobile is the result of all these elements, and of patents, etc.; and so on, *ad infinitum*. If these elements should be separated from the finished product and the sales tax applied only to the cost of the raw material, the sales tax act would, for all practical purposes, be entirely destroyed. The material used in the making of a phonograph record probably costs only a few cents. The voice of a Caruso recorded thereon makes it sell for perhaps a dollar. To measure the sales tax only by the value of the physical material in this phonograph record is to apply an impossible formula. In a tax matter under consideration in *Bergeda* v. *State*, 179 Tenn. 460, 469, 167 S. W. (2d) 338, 341, 144 A. L. R. 696, this Court held that ''not only the final purpose of the law must be considered, but the means of its administration—the ways it may be defeated.'' We do not agree with the principle enunciated by the *Illinois Cases, supra*, in so far as that holding applies to the sales tax. The holding of those cases is, we also think, contrary to the majority view. We refer without discussion to the following cases cited in the brief of appellees: *Bigsby* v. *Johnson*, Cal. Sup., 99 P. (2d) 268; *People ex rel. Walker Engraving Corp.* v. *Graves*, 243 App. Div. 652, 276 N. Y. S. 674; 268 N. Y. 648, 198 N. E. 539; *Voss* v. *Gray*, 70 N. D. 727, 298 N. W. 1; *Cusick* v. *Commonwealth*, 260 Ky. 204, 84 S. W. (2d) 14; *State Tax Commission* v. *Hopkins*, 234 Ala. 556, 176 So. 210. The statute makes no distinction between sales and rentals. The language of Section 3 is:

''It is hereby declared to be the legislative intent that every person is exercising a taxable privilege who, engages in the business of selling tangible personal property at retail in this State, or who rents or furnishes any

of the things or services taxable under this Act, or who stores for use or consumption in this State any item or article of tangible personal property as defined herein and who leases or rents such property within the State of Tennessee.''

■ It is our opinion that the point decided in *Saverio* v. *Carson, supra,* is conclusive as to the question here, and that it is sound on principle and in accord with at least the majority view in this country. We, therefore, hold that the rental or leasing of these moving picture films by exhibitors in Tennessee is a rental or leasing of tangible personal property within the meaning of our Sales Tax Law, and that the correct measure of the tax is the gross amount of rent paid.

■ It is pointed out by appellant that moving picture theatres pay a gross receipts tax under the general revenue bill and, therefore, the Legislature intended to omit them from the provisions of the Sales Tax Law, since the 2% tax under that law is not passed on to the patrons. A like contention was unsuccessfully made in *Saverio* v. *Carson, supra* [186 Tenn. 166, 208 S. W. (2d) 1019], wherein this Court, in holding such insistence untenable said: ''Practically every merchant or dealer who pays sales taxes to the State also pays one or more other privilege taxes to his county court clerk under the General Revenue Act.''

The decree of the Chancellor is affirmed with costs adjudged against the appellants.

All concur.