55 So.2d 812

**PARAMOUNT–RICHARDS THEATRES, Inc. v. STATE.**

**3 Div. 564.**

Supreme Court of Alabama.

June 28, 1951.

Rehearing Denied Jan. 10, 1952.

See also, 252 Ala. 54, 39 So.2d 380.

Richard T. Rives and Rives & Godbold, Montgomery, John W. Lapsley, Selma, and Gibbons Burke, New Orleans, La., for appellant.

522

Lawrence K. Andrews, Union Springs, for Alabama Theatre Owners Ass'n, amicus curiae.

A. A. Carmichael, Atty. Gen., and M. Roland Nachman, Jr., Asst. Atty. Gen., for appellee.

LIVINGSTON, Chief Justice.

This is the second appeal in this cause. On former appeal to this court, the decree of the Circuit Court, in Equity, of Montgomery County, sustaining the State's demurrer to the original bill filed by the appellant in pursuance to an appeal from an assessment of use taxes by the State Department of Revenue was affirmed. See 252 Ala. 54, 39 So.2d 380, 383. We there pointed out that "neither the lease nor the license for use of the films are made exhibits to the bill nor are their contents stated. We are not advised by the allegations of the bill whether the shipments of each such films are leased and shipped separately, constituting a single transaction or whether they are shipped under a long-term lease, covering a large quantity of film shipments and delivered at regular intervals to meet the needs of the lessee in the usual and daily conduct of business."

Appellant, taxpayer, amended its bill by rewriting it in its entirety so as to set forth the facts in much greater detail, and attached to and made a part thereof a typical lease or license to use the film contract between the producer distributor and the appellant, the taxpayer exhibitor. The State's demurrer to the bill as last amended was sustained. The taxpayer declined to plead further and the trial court entered a final decree affirming the assessment for use tax made by the State Department of Revenue and rendered judgment against appellant accordingly. From that final decree this appeal is prosecuted.

The case involves the interpretation and application of Alabama's use tax law. Section 787, et seq., Title 51, Code of 1940. In pertinent part section 788, supra, provides: "Property taxed; persons liable. (a) An excise tax is hereby imposed on the storage, use or other consumption in

this state of tangible personal property purchased at retail on or after the first of March 1939, for storage, use or other consumption in this state at the rate of two percent of the sales price of such property, except as provided in subsection (b) of this section." (Subsection b is not here material.)

Subsections (i) and (j) of section 787, supra, are as follows: "(i) The term 'purchase' means acquired for a consideration, whether such acquisition was effected by a transfer of title, or of possession, or of both, or a license to use or consume; whether such transfer shall have been absolute or conditional, and by whatsoever means the same shall have been effected; and whether such consideration be a price or rental in money, or by way of exchange or barter. (j) The term 'sales price' means the total amount for which tangible personal property is sold, including any services (including transportation) that are a part of the sale, valued in money, whether paid in money or otherwise, and includes any amount for which credit is given to the purchaser by the seller, without any deduction therefrom on account of the cost of the property sold, the cost of the materials used, labor or service cost, interest charged, losses or any other expenses whatsoever; provided, that cash discounts allowed and taken on sales shall not be included and sales price shall not include the amount charged for property returned by customers when the entire amount charged therefor is refunded either in cash or by credit."

In part section 789 provides: "Exemptions.—The storage, use or other consumption in this state of the following tangible personal property is hereby specifically exempted from the tax imposed by this article: (a) Property, the gross proceeds of sales of which are required to be included in the measure of the tax imposed by the provisions of article 10 of this chapter."

Paragraphs 5 to 9, inclusive, of the bill of complaint will be set out in the report of the case.

The contract attached to and made a part of the bill of complaint and which is alleged to be typical of all contracts under which appellant taxpayer exhibits pictures in Alabama, provides that the "distributor grants exhibitor, and exhibitor accepts, a limited license under copyright of the motion pictures specified in the schedule hereof and of any matter recorded therewith, to exhibit publicly, any motion pictures and to reproduce the recorded sound in synchronism therewith at the said theatre for the number of days specified in the schedule; on condition that, if copyrighted musical compositions are included in such recorded sound, exhibitor will have at the date or dates of exhibition of such motion pictures a license from the copyright proprietor of the license thereof, to perform publicly the said copyrighted musical compositions. The contract further provides:

"For the license herein granted to exhibit each of said motion pictures exhibitor agrees to pay distributor, at distributor's branch office, the license fee provided for in the schedule.

"(a) Exhibitor shall pay the fixed or guaranteed sums specified in the schedule at least three (3) days in advance of the respective dates of delivery of the prints at distributor's branch office or of the respective dates of shipment to exhibitor from another exhibitor.

"(b) Percentage bookings: If the license fee for any of said motion pictures is determined in whole or in part upon all or any part of the gross admission receipts (herein referred to as gross receipts) of said theatre, exhibitor shall pay the percentage part of such license fee immediately after the last exhibition of each such motion picture respectively, or if requested by distributor, at the end of each day's exhibition. Exhibitor shall deliver to distributor immediately after the last exhibition of each respective motion picture a correct itemized statement of the gross receipts of said theatre for each day of the exhibition, upon forms furnished by the distributor, signed by the exhibitor or manager or treasurer and the cashier of said theatre. The statement shall include such facts and figures as may be provided in the schedule to be furnished by exhibitor. Distributor is hereby given the right to

verify, upon the exhibition date or dates of each motion picture, all admissions to said theatre, and the receipts therefrom; and at any time or times after the conclusion of the engagement of each motion picture distributor shall have the right to audit all the exhibitor's books, records and vouchers pertaining to the exhibition of said motion picture, the admissions to said theatre and the receipts therefrom, and pertaining to any expenditures or deductions provided hereunder to be made by the exhibitor, and if exhibitor's operating expense is an element in computing the license fees payable hereunder, pertaining to such operating expenses. The right of verification and the right to audit may be exercised by distributor through its authorized representatives. For said purposes distributor and its authorized representatives shall have free access on and after said exhibition dates, to the theatre, box office, ticket machines, tickets, stubs, books, records and vouchers. Distributor agrees that any information obtained pursuant to the provisions of this paragraph shall be treated as confidential, excepting in arbitration proceedings or litigation. Acceptance by distributor of any sum tendered by exhibitor in full or in part payment of any license fee based upon a percentage of the admission receipts of said theatre shall not estop or prevent distributor from thereafter disputing the correctness of such payment."

This and the former appeal present a case of first impression in this jurisdiction.

Does the transaction at bar constitute a "storage, use or other consumption" in the State of Alabama of tangible personal property purchased at retail for "storage, use or other consumption" in the State of Alabama within the meaning of the Alabama Use Tax Act? And does the consideration paid by the exhibitor to the producer lessor for the use of the films involved constitute "sales price," within the meaning of Title 51, Sections 787 and 788, Code of 1940 as amended? In other words, as stated on former appeal: "The question presented is not whether it was within legislative competence to levy a use tax for the activity in which appellant

is engaged, but whether or not the activities, as disclosed by the allegations of the bill, fall within the provisions of the statute, Code of 1940, Title 51, § 788." [252 Ala. 54, 39 So.2d 381.]

Although it is sometimes broadly stated either that tax laws are to be strictly construed, or on the other hand, that such enactments are to be liberally construed, this apparent conflict of opinion can be reconciled if it is borne in mind that the correct rule appears to be that where the intent or meaning of tax statutes, or statutes levying taxes, is doubtful, they are, unless a contrary legislative intention appears, to be construed most strongly against the government, and in favor of the taxpayer or citizen. Any doubts as to their meaning are to be resolved against the taxing authority and in favor of the taxpayer, or, as it is sometimes put, the person upon whom it is sought to impose the burden. * * * 51 Am.Jur. pp. 367, 368; City of Bessemer v. Tennessee Coal, Iron & R. Co., 131 Ala. 138, 142, 31 So. 492; Pappanastos v. State Tax Commission, 235 Ala. 50, 177 So. 158; National Linen Service Corp. v. State Tax Commission, 237 Ala. 360, 186 So. 478.

The language of the levying statute, to repeat, is "Property taxed; persons liable. —(a) An excise tax is hereby imposed on the storage, use or other consumption in this state of tangible personal property purchased at retail on or after the first of March 1939, for storage, use or other consumption in this state at the rate of two percent of the sales price of such property * * *."

The quoted language of the statute circumscribes the levy by limiting it to an excise tax, under the facts as they now appear, on the use in this state of tangible personal property purchased at retail at the rate of two percent of the sale price of such property.

As above stated this is a case of first impression in this jurisdiction. The appellee strongly relies on the three following cases from other jurisdictions: United Artists Corp. v. Tayor, 273 N.Y. 334, 7 N.E.2d 254; Saenger Realty Co. v. Gros-

jean, 194 La. 470, 193 So. 710; Crescent Amusement Co. v. Carson, 187 Tenn. 112, 213 S.W.2d 27. We will analyze those cases later but before doing so we think that some analysis of our statutory system providing for a sales tax and a use tax should be made.

Alabama is one of the states which has adopted two separate acts for the purpose of imposing a tax upon, or with respect to, or measured by, the retail sale of tangible personal property. Prior to 1939 the Sales Tax Act Code 1940, Tit. 51, § 751 et seq. embodied a use tax feature, sec. 2(d).

The Sales Tax Act applies to retail sales within the state. The Use Tax Act is designed to apply only to sales (or purchases) made in interstate commerce, or sales (or purchases) made outside of the state of goods thereafter brought into the state for use by the purchaser.

Under the Sales Tax Act the retail sale is the taxable incidence.

Under the Use Tax Act the use (technically storage, use or consumption) is the taxable incidence.

The measure of the tax under the Sales Tax Act is the retail sales price of the goods; and under the Use Tax Act the measure of the tax is likewise the retail sales price of the goods.

■■ The intent and result of this legislation is to impose a sales tax on sales which occur within the state, and a use tax (so called) measured by the retail sale price of goods purchased outside of the state for use within the state. For these reasons these two acts are referred to as being complementary, one to the other. The Use Tax Act is referred to as a compensatory measure, to equalize the burden of the sales tax and prevent avoidance of the tax by the purchase of goods in interstate commerce or from outside of the state. As was said on former appeal of this case, "The dominating legislative intent was to prevent evasion of the sales tax levy by persons resident or engaged in business within Alabama by purchasing goods, chattels and other property outside of the State of Alabama at retail and bringing them into this state for use and con-

sumption, regardless of the methods or means of transportation or the use to which they are applied. The levy of the tax attaches after the act of transportation ends and the property comes to rest in this state for use or consumption. 26 R.C.L. pp. 236, 237, § 209; Billings v. United States, 232 U.S. 261, 34 S.Ct. 421, 58 L.Ed. 596." [252 Ala. 54, 39 So.2d 384.]

It is therefore necessary that these two acts should be construed *in pari materia,* giving to each its separate field of operation.

The tax imposed under the provisions of the Use Tax Act is specifically measured by a percentage of the retail sales price of the property. Sec. 788, supra.

■■ The technical means of confining the use tax to interstate sales or sales (purchases) made outside of the state for use in the state, is accomplished by exempting from the provisions of the use tax any property sold under such circumstances as would make the sale taxable under the provisions of the Sales Tax Act. In other words, the Use Tax Act is drafted in such manner as to impose a use tax upon the use of tangible personal property within the state, at the same rate as the sales tax. In order to limit the use tax to interstate transactions, the Act is so worded as to exempt from the measure of the tax all retail sales of tangible personal property made within the state. Sec. 789, Title 51, Code 1940. But for this provision, the Use Tax Act would have the effect of imposing an additional tax in the same amount as imposed by the Sales Tax Act. In this way, retail sales made within the state would be subjected to a double tax.

In addition to imposing a sales tax or use tax upon or measured by the retail sale of tangible personal property, the legislature imposed a similar tax burden upon various shows, exhibits, amusements, theatres, etc., in which there was no sale of tangible personal property, but only the sale of tickets for the privilege of attendance or entrance. In taxing such businesses or activities the tax is imposed upon the entire gross receipts, at the same percentage as applied to the retail sales of property

and containing provisions requiring the passing on of the tax to the customer.

Since the conduct of an exhibit, show or theatre is a local activity which occurs within the state, and is therefore subject to be taxed by the state, no question of interstate commerce being involved, such tax is incorporated in the Sales Tax Act and no similar provisions appear in the Use Tax Act.

For these reasons all activities, other than sales, upon which the legislature intended to impose a sales tax or tax equal to the sales tax, were incorporated in the Sales Tax Act.

None of such activities are taxed under the provisions of the Use Tax Act.

If there is no retail sale there is no taxable event under the Sales Tax or Use Tax Act. By reason of this fact, in order to impose a tax upon building materials not purchased by the contractor but manufactured or produced by him, and thereafter consumed by him in the construction of a building within the state, the legislature adopted an amendment to the Sales Tax Act incorporated as Subsec. 2 of Sec. 752, to impose a tax, under such circumstances, upon such contractor, measured by the cost of manufacture, General Acts 1943, p. 587, subsequently changed to "reasonable and fair market value". General Acts 1947, p. 160. This amendment had the effect of preventing an escape in this tax where the manufacturer or producer is also the consumer or user of the goods, but these provisions are limited to construction work in Alabama and do not cover other instances in which a user or consumer may also be the producer or manufacturer of the goods. However if the manufacturer is not manufacturing or producing a product for sale such manufacturer is construed to be the consumer of the raw materials purchased by him, and the sale of such raw materials to him would be taxable under the Sales Tax Act or Use Tax Act. The manufacturer under such circumstances could not claim that the sale to him is a wholesale sale since he is producing a product for his own use, and not for sale. See paragraph (1) Sec. 752.

Since the use of materials in the construction of a building within the State of Alabama necessarily involves a local activity subject to tax by Alabama, it was only necessary to incorporate the provisions of Subsec. 2 of Sec. 752 in the Sales Tax Act. No similar provisions were added to the Use Tax Act. The significance of this is that the legislature deemed the Use Tax Act as applying only to goods obtained in interstate commerce or from outside of the state; and the Use Tax Act is not used to impose a use tax unless the goods are purchased in interstate commerce or are purchased outside the state for use in the state.

In speaking of the exemptions contained in Sec. 789 of the Use Tax Act this Court in the case of State of Alabama v. Wilputte Coke Oven, Inc., 251 Ala. 271, 37 So.2d 197, 198, said: "There is exempt from this tax property subject to the sales tax, Article 10, Title 51, which means that the use tax does not apply to property whose sale is effected in Alabama."

This same idea was expressed in the case of Layne Central Co. v. Curry, 243 Ala. 165, 8 So.2d 839.

If the legislature had intended to impose a tax upon the rental of tangible personal property within the state, in addition to imposing a tax upon the sale of such property, such tax would no doubt have been included in the Sales Tax Act. The rental of property within the state, so far as the same involves the lessor as well as the lessee, is an event which transpires within the state, and is therefore a local activity, subject to state taxation. This is true whether the contract for the rental of property within the state is made by means of interstate commerce or is signed or executed wholly outside of the state. If the contract or rental provides for the renting of property actually situated within the state, the renting becomes a local event subject to state taxation, irrespective of the fact that the property to be rented is brought into the state in interstate commerce or is thereafter to be shipped out of the state in interstate commerce.

■ If the legislature had imposed a rental tax only upon property shipped into the state in interstate commerce or purchased outside of the state, it would constitute a direct discrimination against interstate commerce, and such provision would therefore be invalid as being in conflict with the interstate commerce clause in the Constitution of the United States, art. 1, § 8, cl. 3. If a rental tax had been intended to apply to all transactions involving the rental of tangible personal property within the state, it would only have been necessary to include such tax in the Sales Tax Act. It would not be necessary to include a similar provision in the Use Tax Act.

■ The Use Tax Act, as it now stands, if it should be construed as imposing a use tax upon rentals, measured by the amount of the rent paid, such construction would result in the imposition of a double tax for the reason that the sale of the property to the lessor for the purposes of rental to others would still be construed as a retail sale. The lessor would be required to pay the tax upon such sale to him, whether sales tax or use tax, and this same property would also be subject to a tax measured by the amount of rental paid by the lessee to the lessor. The lessor could not claim that the sale to him was a wholesale sale for the reason that his purchase would not be for the purpose of resale; and the lessor would actually be making use of the property in renting it to his customers.

■ Much stress is laid on the definition in subdivision (i) of Section 787, supra, which is as follows: "(i) The term 'purchase' means acquired for a consideration, whether such acquisition was effected by a transfer of title, or of possession, or of both, or a license to use or consume; whether such transfer shall have been absolute or conditional, and by whatsoever means the same shall have been effected; and whether such consideration be a price or rental in money, or by way of exchange or barter."

This provision of the Use Tax Act was obviously intended to prevent evasions of the act where there is an actual sale of tangible personal property. It was designed to prevent camouflaging an actual sale by designating it as a lease, license, or rental and was not intended to include a bona fide rental of tangible personal property. In any event, it can only apply to transactions consummated by the consumer outside the state of Alabama, and does not apply to transactions between the consumer and others in this state.

■ It is also argued that where property is purchased, whether in the state or outside of the state, there are two taxable events with reference to it, i. e., the purchase and the rental. But such a construction necessarily presupposes two consumers of the same property, and we are clear to the conclusion that the legislature never intended such a result. This is clearly demonstrated by such businesses as are engaged in the rental of tangible personal property purchased at retail, such as U-Drive-It businesses, the renting of skates by operators of skating rinks, the purchase of books to be used in a rental library, persons engaged in the renting of boats, bath suits, fishing tackle and other articles of personal property, and many others. That such was not the result is the effect of the holding in the National Linen Service Corporation case, where it was held that the purchaser was the consumer. It was there said, "The consumer is the last person to whom property passes in the course of ownership. This is the test of a retail transaction."

In the case of United Artists Corp. v. Taylor, supra, the New York court had before it a sales tax act, but no use tax. The court said: "This amendment contains this definition: '(e) The word "sale" or "selling" means any transfer of title or possession or both, exchange or barter, license to use or consume, conditional or otherwise, in any manner or by any means whatsoever for a consideration, or any agreement therefor.' Section 1(e). The transaction which is the subject of the tax under review consists of the transfer by the distributor to the exhibitor of the possession of corporeal property in the form of positive and negative prints of photoplays with the license to use or exhibit them for a specified time. The license to exhibit without the transfer of

possession would be valueless. Together they are one transaction and constitute a sale within the definition of Local Law No. 24. In so far as this sale originates and is consummated in New York City, it is subject to the tax." [273 N.Y. 334, 7 N.E. 2d 256.]

No such definition is contained in the Alabama Sales Tax Law.

The provisions of the Louisiana Act imposing a tax upon the rental of tangible personal property, Public Welfare Act, Act 2 of 1938, specifically imposes a tax upon the "gross proceeds derived from the lease or rental of tangible personal property", Section 3(c); and also imposes a tax upon the "monthly lease or rental price paid by lessee or rentee, or contracted or agreed to be paid by lessee or rentee to the owner of the tangible personal property", Section 3(d).

The provisions in the Tennessee Act, in this respect, Public Acts of Tennessee of 1947, Chapter 3, Section 3, read as follows:

"(c) At the rate of two percent (2%) of the gross proceeds derived from the lease or rental of tangible personal property, as defined herein, where the lease or rental of such property is an established business, or part of an established business, or the same is incidental or germane to said business.

"(d) At the rate of two percent (2%) of the monthly lease or rental price paid by lessee or rentee, or contracted or agreed to be paid by lessee or rentee, to the owner of the tangible personal property."

These provisions are identical with the Louisiana Act, except for the rate of tax.

These authorities construe sales tax acts which are entirely different from the Alabama Sales Tax Act.

Whenever the tax under sales or use tax acts is extended to cover the rental of tangible personal property, measured by the amount of the rental (such as in New York, Louisiana and Tennessee), the lessor is not construed as the consumer, and the sale to the lessor is not construed as a retail sale; and the levy of the tax upon the lessee, measured by the rental, is in lieu of any levy upon the lessor or

upon the sale of the property to the lessor. Such a construction is necessary to avoid a double tax; or to prevent what is termed as a pyramiding of the tax, or as imposing an intermediary tax.

Double taxation is permissible, it is true, but is, as a matter of policy, to be avoided whenever possible. 61 C.J. p. 137, sections 69, 70 and 71; Montgomery County Board of Revenue v. Montgomery Gaslight Co., 64 Ala. 269.

The presumption is against the intention of the legislature to impose double taxation on the same property. 61 C.J. sec. 71,—and prevails unless overcome by the express words of the statute. Any construction of a taxing statute which results in the taxation of the same property twice is to be avoided if possible and never to be adopted unless necessary to affect the manifest purpose of the legislature. 61 C.J. pp. 139, 140, sec. 71; Montgomery Board of Revenue v. Montgomery Gaslight Co., supra.

But the fundamental theory of the sales or use tax is to impose the tax only once, which is usually accomplished by placing the levy upon the last or final sale, namely: the retail sale to the consumer. And when rental is specifically taxed, the sale to the lessor is not treated as a retail sale but as a wholesale sale (or sale for resale), and the lessee is construed as the consumer. But this is not the Alabama rule. In the formative period of sales and use tax legislation, in the National Linen Service Corporation case, supra, this court established the rule, and committed Alabama to the construction, that a sale of goods to the lessor (for use by him in renting or leasing the same to his customers) is a retail sale, the lessor in such case being the consumer.

Under the Alabama rule, it was not necessary to impose a tax upon rental to prevent escapes, for the reason that the lessor could not buy free of tax—the sale to him was by law construed as a retail sale. It is for this reason, no doubt, that the Legislature in its 1939 revision of the Sales and Use Tax Act did not attempt specifically to change the Alabama rule. Nothing

appears in the 1939 Sales Tax Act with reference to rentals. The lessor who purchases goods in Alabama for use in the rental thereof to his customers must still pay the sales tax, as the consumer, pursuant to the Alabama rule. There is no provision in the Sales Tax Act which would relieve the lessor from the payment of the sales tax, when purchasing within the State (he cannot claim to be purchasing for resale); and, of course, no different rule or construction applies when the lessor purchases his goods outside of the State, or in interstate commerce, for use in Alabama, in the rental thereof to his customers. In fact, if a different rule should be applied to impose a greater tax upon the goods purchased by the lessor outside of the State, or in interstate commerce, the resulting discrimination would violate the Commerce Clause of the Constitution of the United States, and the statute (to that extent) would be unconstitutional and void.

We can find no authority in the Sales Tax Act to justify a holding that bona fide rentals of tangible personal property are subject to that act, and we are clear to the conclusion that there was no legislative intent to impose, under the Use Tax Act, a tax upon any property sold subject to the Sales Tax Act, and no intent in the Use Tax Act to impose a tax upon any activity or incident subjected to the tax under the Sales Tax Act. And since this taxpayer's business is specifically and separately subjected to a tax under the Sales Tax Act in Section 753(b) to the extent of 2% of the entire gross receipts of such business, and the pictures produced from the films constitute, in a sense, this taxpayer's stock in trade, there is no reason to assume that the legislature intended also to tax the rental or the license fees paid by this taxpayer for the privilege of exhibiting such photoplays.

To the contrary, there is every reason to conclude that the legislature intended by the specific exemption contained in Section 789 to eliminate and exempt from the use tax any and all property purchased subjected to the sales tax and each and

every incident or activity specifically subjected to the sales tax.

The appellant is therefore not liable under the allegations of the bill for the tax assessed.

Reversed and remanded

FOSTER, LAWSON, SIMPSON and STAKELY, JJ., concur.

BROWN, J., dissents.

BROWN, Justice (dissenting).

I listened with much interest to the reading of the opinion by the Chief Justice, which now becomes the majority opinion in this case, during the consultation to ascertain what conclusion had been reached. After discussing broadly the tax laws levying the sales tax, the use tax and the excise tax in respect to many subjects covering this broad field, I concluded that I could not concur in the opinion.

I have since examined the opinion with much care and conclude that it is ambiguous, illogical and unsound. It concludes:

"We can find no authority in the Sales Tax Act to justify a holding that bona fide rentals of tangible personal property is subject to that act, and we are clear to the conclusion that there was no legislative intent to impose, under the Use Tax Act, a tax upon any property sold subject to the Sales Tax Act; and no intent in the Use Tax Act to impose a tax upon any activity or incident subject to the tax under the Sales Tax Act. And since this taxpayer's business is specifically and separately subjected to a tax under the Sales Tax Act in Section 753(b) to the extent of 2% of the entire gross receipts of such business, and the picture produced from the films constitute, in a sense, this taxpayer's stock in trade, there is no reason to assume that the legislature intended also to tax the rental or the license fees paid by this taxpayer for the privilege of exhibiting such photoplays.

"To the contrary, there is every reason to conclude that the legislature intended by the specific exemption contained in Section 789 to eliminate and exempt from the use tax any and all property purchased subject-

ed to the sales tax and each and every incident or activity specifically subjected to the sales tax.

"The appellant is therefore not liable under the allegations of the bill for the tax assessed."

This conclusion is clearly based on the idea and concept that the tax levied exempts the use, storage and possession and is a property tax, while the authorities hold that it is an excise tax acquired by purchase as defined in subsection (i) Sec. 787, Title 51, Code of 1940, which is in the following language: "The term 'purchase' means acquired for a consideration, whether such acquisition was effected by a transfer of title, or of possession, or of both, or a license to use or consume; whether such transfer shall have been absolute or conditional, and by whatsoever means the same shall have been effected; and whether such consideration be a price or rental in money, or by way of exchange or barter."

The allegations in the bill show conclusively that each film delivered for use is a separate transaction and the compilation of the tax is based on the gross receipts of that specific film used by the theatre operator in its business. The effect of the shipment and delivery by the distributor to the operator of the theatre vests in the operator a special property right, which gives him the right of possession, the right to store and the right to use the film in his business. A tax on that property is not contemplated by the act, but on its use, possession, storage and right to store the film. It follows as a necessary consequence that if there is a purchaser as defined in the act, there is bound to be a purchase. And if the purchase is made in this state, it is subject to the sales tax act, which is passed on to the consumer. The contract or license under which the parties operate, as the allegations show, was a purchase made by the operator outside the State of Alabama and the films are shipped in interstate commerce and delivered and come to rest in Alabama, where the purchaser is engaged in business, and delivered to him. In one paragraph of the opinion, following the opinion on former appeal, it is held that when such interstate shipment ceased, there was no

burden on interstate commerce. If the film was delivered to the carrier outside the state, f. o. b., the carrier became the agent of the operator to deliver the shipment as contemplated in the license or rental contract set out in the bill. Pilgreen v. The State, 71 Ala. 368.

The question of whether the carrier is the agent of the distributor or the purchaser is not important. Under the terms of the license act, the lease contract, the purchase is bound to have been in a foreign state. The clear intent and purpose of the legislature by defining "purchase" so as to bring the transaction here involved within the influence of the Use Tax Act clearly manifests that *it was the purpose to tax the use or storage of the film acquired as defined.* The license or lease to use shows that the business of the distributor was not subject to the jurisdiction of the state taxing authorities and, therefore, that the purchase and sale did not occur in Alabama and the levy made in the instant case was not made under the sales tax act but under the Use Tax Act.

I quote from the majority opinion:

"The tax imposed under the provisions of the Use Tax Act is specifically measured by a percentage of the retail sales price of the property. Sec. 788 [Title 51, Code of 1940].

"The technical means of confining the use tax to interstate sales or sales (purchases) made outside of the state for use in the state, is accomplished by exempting from the provisions of the use tax any property sold under such circumstances as would make the sale taxable under the provisions of the Sales Tax Act. In other words, the Use Tax Act is drafted in such manner as to impose a use tax upon the use of tangible personal property within the state, at the same rate as the sales tax. In order to limit the use tax to interstate transactions, the Act is so worded as to exempt from the measure of the tax all retail sales of tangible personal property made within the state. Sec. 789, Title 51, Code 1940. But for this provision, the Use Tax Act would have the effect of imposing an additional tax in the same amount as imposed by the Sales Tax

Act. In this way, retail sales made within the state would be subjected to a double tax."

These utterances overlook the fact that when a retail sale is made to a purchaser, he acquires the entire title to the property and the tax is passed on to him. The out of state seller or lessor is not subject to the jurisdiction of the state for taxing purposes. Therefore, the excise tax is levied on the purchaser within the meaning of said subsection (i) quoted above. See also § 787, subsections (h), (g) and (i) and § 788(b) and § 788, Title 51, Code of 1940. The prevailing opinion reads out of the statute the definition of "purchase" and the Use Tax Act makes the basis of the levy, when considered in connection with section (i), the gross receipts of the earning of each film, as shown in this case.

The use of materials for the construction of buildings by the manufacturer is not a question in this case and what the opinion says in that respect is not pertinent to the facts of this case.

We quote further from the prevailing opinion: "If the legislature had intended to impose a tax upon the rental of tangible personal property within the state, in addition to imposing a tax upon the sale of such property, such tax would no doubt have been included in the Sales Tax Act. The rental of property within the state, so far as the same involves the lessor as well as the lessee, is an event which transpires within the state, and is therefore a local activity, subject to state taxation. This is true whether the contract for the rental of property within the state is made by means of interstate commerce or is signed or executed wholly outside of the state. If the contract or rental provides for the renting of property actually situated within the state, the renting becomes a local event subject to state taxation, irrespective of the fact that the property to be rented is brought into the state in interstate commerce or is thereafter to be shipped out of the state in interstate commerce."

This statement is clearly inconsistent with the taxing statutes.

Said opinion further observes: "If the legislature had imposed a rental tax *only upon property* shipped into the state in interstate commerce or purchased outside of the state, it would constitute a direct discrimination against interstate commerce, and such provision would therefore be invalid as being in conflict with the interstate commerce clause in the Constitution of the United States. * * *" (Italics supplied.)

This statement of the law would destroy the power of the legislature to levy such tax and is unsound. As we held on the former appeal and was held in this opinion in another paragraph, when the shipment of the film came to rest at the destination of the shipment, interstate commerce ended. There is nothing in such transaction to burden interstate commerce.

We quote from the opinion again: "If a rental tax had been intended to apply to all transactions involving the rental of tangible personal property within the state, it would only have been necessary to include such tax in the Sales Tax Act. It would not be necessary to include a similar provision in the Use Tax Act."

This is a matter left to the discretion of the legislature in passing the Use Tax Act to prevent evasion of taxation under the Sales Tax Act. Moreover it assumes, contrary to the facts, that the entire transaction occurred in Alabama.

Another inconsistent, unsound and misleading statement follows: "The Use Tax Act, as it now stands, if it should be construed as imposing a use tax upon rentals, measured by the amount of the rent paid, such construction would result in the imposition of a double tax for the reason that the sale of the property to the lessor for the purposes of rental to others would still be construed as a retail sale."

No such transaction is involved in this case.

Another misleading and unsound statement in the opinion is:

"The lessor would be required to pay the tax upon such sale to him, whether sales tax or use tax, and this same property would also be subject to a tax measured by the

amount of rental paid by the lessee to the lessor. The lessor could not claim that the sale to him was a wholesale sale for the reason that his purchase would not be for the purpose of resale; and the lessor would actually be making use of the property in renting it to his customers."

No such question is presented in this case.

The following observations purporting to interpret the true meaning of subsection (i), Section 787, Title 51, Code of 1940, are obviously unsound: "This provision of the Use Tax Act was obviously intended to prevent evasions of the act where there is an actual sale of tangible personal property. It was designed to prevent camouflaging an actual sale by designating it as a lease, license, or rental and was not intended to include a bona fide rental of tangible personal property. In any event, it can only apply to transactions consummated by the consumer outside the state of Alabama, and does not apply to transactions between the consumer and others in this state."

If the rental and possession were acquired under the contract set out in the bill, and the films were delivered from outside the state from which the purchaser had ordered the film, this would bring the transaction clearly within the provisions of the Use Tax Act.

The opinion further observes: "But such a construction necessarily presupposes two consumers of the same property, and we are clear to the conclusion that the legislature never intended such a result. This is clearly demonstrated by such businesses as are engaged in the rental of tangible personal property purchased at retail, such as U-Drive-It businesses, the renting of skates by operators of skating rinks, the purchase of books to be used in a rental library, persons engaged in the renting of boats, bath suits, fishing tackle and other articles of personal property, and many others."

These activities are foreign to the issues presented in this case and are wholly impertinent thereto.

The last sentence in the quotation from the New York case United Artists v. Taylor, 273 N.Y. 334, 7 N.E. 2d 254, "In so far as this sale originates and is consummated in New York City, it is subject to the tax", shows that the court was dealing with a sales tax.

The quotation from the Tennessee Statute, Public Acts of Tenn. of 1947, Chapter 3, Section 3:

"(c) At the rate of two percent (2%) of the gross proceeds derived from the lease or rental of tangible personal property, as defined herein, where the lease or rental of such property is an established business, or part of an established business, or the same is incidental or germane to said business.

"(d) At the rate of two percent (2%) of the monthly lease or rental price paid by lessee or rentee, or contracted or agreed to be paid by lessee or rentee, to the owner of the tangible personal property", shows that this, in substance, is what is provided in the Use Tax Act in Alabama.

We further quote from the majority opinion: "Whenever the tax under sales or use tax act is extended to cover the rental of tangible personal property, measured by the amount of the rental (such as in New York, Louisiana and Tennessee), the lessor is not construed as the consumer, and the sale to the lessor is not construed as a retail sale; and the levy of the tax upon the lessee, measured by the rental, is in lieu of any levy upon the lessor or upon the sale of the property to the lessor. Such a construction is necessary to avoid a double tax; or to prevent what is termed as a pyramiding of the tax, or as imposing an intermediary tax."

The only tax against the operator of the theatre is the license tax for doing business and this tax is passed on to its customers in the sale of tickets for attending the exhibition of the film. In effect the operator is not taxed any more than the seller is taxed who makes a retail sale. It passes on to the consumer. There is no double taxation. In the circumstances in the instant case, the tax is levied upon the use, consumption or storage of personal property acquired under a lease license entered into by the distributor in a foreign state. So the citation of authority and observations

in respect to double taxation are inapplicable in the instant case.

We quote further from the majority opinion: "Under the Alabama rule, it was not necessary to impose a tax upon rental to prevent escapes, for the reason that the lessor could not buy free of tax—the sale to him was by law construed as a retail sale. It is for this reason, no doubt, that the Legislature in its 1939 revision of the Sales and Use Tax Act did not attempt specifically to change the Alabama rule."

There was no necessity for changing the Alabama rule.

Many other utterances like these quoted from the majority holding, in my opinion, show that it is inconsistent, uncertain, ambiguous and their effect, if allowed to stand, trenches on the power of the legislature to levy such use tax as here involved.

I, therefore, respectfully dissent.