## Application of WARE.

Railroad & Public Utilities Commission.

June 14, 1956.

Martin Sack, Jacksonville, for the applicant.

William P. Tomasello, Bartow, for Commercial Carrier Corp., protestant.

John M. Allison, Tampa, for Central Truck Lines, Inc., as its interest might appear.

Commissioners JERRY W. CARTER and ALAN S. BOYD participated in the disposition of the application.

BY THE COMMISSION.

The commission by its designated examiner, J. J. Daniel, held a public hearing on this application on October 5, 1955 at 2255 Oak St., Jacksonville.

By his application, as amended, F. H. Ware seeks a certificate of public convenience and necessity authorizing the transportation of citrus pulp from all points in Orange, Polk and Marion counties to all points in Duval and Clay counties, over irregular routes, with deliveries restricted to dairies and farms. When the application

was amended at the hearing to restrict deliveries to dairies and farms, Central Truck Lines, Inc. withdrew its protest.

At the conclusion of the hearing the applicant moved to dismiss his application on the ground that the proposed transportation, under the provisions of section 323.29, Florida Statutes 1955, is exempt from commission jurisdiction and control. Subsequently, the examiner filed his report and recommendations to the commission in the form of a proposed order in which he recommended that the motion to dismiss be denied and the application granted.

The applicant filed exceptions to the examiner's proposed order and on March 27, 1956 the commission heard oral argument thereon relating to the exemption question raised by the motion to dismiss. We have also considered briefs filed by the attorneys for the applicant and protestant Commercial Carrier Corp. on such question.

All the citrus pulp transported by applicant is to be moved directly to dairies and farms where it will be used for cattle feed. From the testimony it appears that this citrus pulp is the residue of citrus fruit after the juice and seeds have been extracted. Lime is added to counteract the acid. It is dried, run through a hammermill, cut into quarter pieces and then put in 100 pound bags and sold for cattle feed.

Section 323.29 provides in part as follows — "There shall be further exempted from the provisions of this chapter and from commission jurisdiction and control, motor vehicles used exclusively in transporting agricultural or horticultural products, *supplies* and materials, . . . when delivered direct to the growers or consumers, or to an association of such growers or consumers." (Italics added.)

If the citrus pulp here under consideration is transported in vehicles used exclusively in transporting same, and if it is an agricultural supply delivered direct to growers or consumers, it is apparent that its transportation falls within the above exemption.

Funk & Wagnalls New Standard Dictionary defines "agriculture" as follows — "The cultivation of the soil for food products or any other useful or valuable growths of the field or garden; tillage; husbandry; also, by extension, farming, including any industry practiced by a cultivator of the soil in connection with such cultivation, as forestry, fruit-raising, *breeding and rearing of stock*, dairying, market-gardening, etc. * * * " (Italics added.)

In 3 Corpus Juris Secundum, 365 and 366, it is stated — "In its more common and appropriate sense, it has been said, the word 'agriculture' is used to signify that species of cultivation which is intended to raise grain and other field crops for man and beast; it has been said to signify especially cultivation with the plow and in large areas to raise food for man and beast; *in a broader sense, 'agriculture' is the science or art of the production of plants and animals useful to man;* * * * " (Italics added.)

2 American Jurisprudence, 395, defines the term as follows — "Agriculture, in the broad and commonly accepted sense, may be defined as the science or art of cultivating the soil and its fruits, especially in large areas or fields, *and the rearing, feeding and management of livestock thereon,* including every process and step necessary and incident to the completion of products therefrom for consumption or market and the incidental turning of them to account. The term is broader in meaning than 'farming'; and while it includes the preparation of soil, the planting of seeds, the raising and harvesting of crops, and all their incidents, *it also includes* gardening, horticulture, viticulture, *dairying,* poultry, and bee raising, *and more recently 'ranching'.* * * * " (Italics added.)

From the foregoing, it is clear that the term "agriculture" includes the raising of cattle. Feed for such cattle certainly would be properly classified as an agricultural supply. The Supreme Court of Mississippi in Wright v. Walton, 56 Miss. 1, held agricultural supplies to be such things as are necessary or adapted to the conduct of agricultural operations.

Having concluded that citrus pulp cattle feed is an agricultural supply, we come next to the question whether the transportation of same is to a grower or consumer. Although the term "grower" would probably include a "cattle grower," it is obvious that one who receives citrus pulp and feeds it to his cattle is a consumer. In Colbert Feed & Mill Co. v. Oklahoma Tax Commission (Okla.), 109 P. 2d 504, the court held that a cattle owner who bought feed for the purpose of fattening cattle for market was a "consumer". In Paramount-Richards Theatres, Inc. v. State (Ala.), 55 So. 2d 812, the court held the "consumer" to be the last person to whom property passes in the course of ownership.

In consideration of all of the above, we conclude that the transportation of citrus pulp under the circumstances here related is exempt from the provisions of chapter 323 and from commission jurisdiction and control, and the application is therefore dismissed.