583 So.2d 867 (1991)
ZAPATA HAYNIE CORPORATION
v.
Jerry J. LARPENTER, Sheriff and Ex-Officio Tax Collector for Terrebonne Parish.
No. 90 CA 0677.
Court of Appeal of Louisiana, First Circuit.
June 27, 1991.
Rehearing Denied September 4, 1991.
*868 Patrick M. Gusman, New Orleans, Christopher Dicharry, Baton Rouge, for plaintiff and appellant, Zapata Haynie Corp.
Jerri G. Smitko, William F. Dodd, Houma, for defendant and appellee, Jerry J. Larpenter, Sheriff.
Before SAVOIE, CRAIN and FOIL, JJ.
SAVOIE, Judge.
This case involves the issue of whether LSA Const. art. VII § 21(C)(15) (hereinafter referred to as the "commercial seafood exemption"), an exemption from ad valorem taxes for commercial vessels used to gather seafood for human consumption, applies to vessels which engage in menhaden fishing.
Zapata Haynie Corporation, plaintiff, paid under protest $43,758.83 to the Sheriff of Terrebonne Parish, defendant, for 1988 ad valorem taxes on its fishing vessels. Plaintiff filed suit against defendant for a refund of the taxes. Both parties filed motions for summary judgment. From the granting of summary judgment in favor of defendant, plaintiff has appealed.

FACTS
Plaintiff engages in the harvesting, processing and marketing of menhaden, a species of fish which it processes into fish oil, fish meal and fish solubles.[1] Although it is possible for menhaden to be cooked and eaten by humans, they are not because of their oily and bony characteristics. The fish meal produced by plaintiff is used, domestically and abroad, in the production of poultry and hog food, and for aquaculture feed used in shrimp, trout and catfish farming. Plaintiff also sells fish solubles, a liquid protein, to feed companies. However, the fish solubles produced by plaintiff comprise an insignificant portion of its operations.
Plaintiff exports ninety-five percent of its fish oil to European processors.[2] The processors use almost 100% of the fish oil as ingredients in margarine, cooking oil, and other oil based products which are consumed by humans. The fish oil used in the production of inedible products (i.e. cosmetics, paints and industrial coatings) is the result of plaintiff's operations at its Reedville, Virginia plant.

ACTION OF THE TRIAL COURT
The trial court found that plaintiff's menhaden fishing operation was not exempt from ad valorem taxes because it did not *869 think that the redactors of the constitution meant to include menhaden under the commercial seafood exemption. The trial court stated in its reasons for judgment that it relied heavily on the excerpts from the transcripts of the 1973 Constitutional Convention in making its decision.

ASSIGNMENTS OF ERROR
Plaintiff has assigned the following errors:
1. The lower court erred in finding that the gathering of menhaden as a source of fish oil for use in margarine and cooking oil in Europe does not constitute gathering seafood for human consumption pursuant to the Commercial Fishing Vessel Exemption.
2. The lower court erred in finding that the Commercial Fishing Vessel Exemption requires the seafood to be consumed in Louisiana or consumed in a manner commonly done in Louisiana.
3. The lower court erred in ignoring the plain, unambiguous language of the Commercial Fishing Vessel Exemption by considering the constitutional transcripts.
4. The lower court erred in considering the constitutional transcripts which dealt with another exemption.
5. Assuming arguendo that the constitutional transcripts are relevant, the lower court erred in relying on the transcripts which are not dispositive of the delegates [sic] intent because the delegates did not discuss the edibility of fish oil.
The sole issue before this court is whether the commercial seafood exemption is applicable to vessels which engage in menhaden fishing.
The commercial seafood exemption, LSA Const. art. VII, § 21(C)(15), provides, in pertinent part, as follows:
Section 21. In addition to the homestead exemption provided for in Section 20 of this Article, the following property and no other shall be exempt from ad valorem taxation.
* * * * * *
(C) Commercial vessels used for gathering seafood for human consumption.
The plaintiff contends that the trial court erred in ignoring the plain and unambiguous language of the commercial seafood exemption by considering the constitutional transcripts. LSA-C.C. art. 9 provides that when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.
We do not agree that the language of the commercial seafood exemption is plain and unambiguous. Seafood means "edible marine fish and shellfish" and edible is defined as "fit to be eaten". Webster's Ninth Edition New Collegiate Dictionary 1058, 396, respectively (1984). It is not clear to this court whether the definition of seafood for human consumption would include something which is produced and subsequently processed from a marine fish or shellfishsuch as the menhaden fish oil or only that seafood whose flesh is used for human consumption.
The Civil Code suggests that an ambiguous text should be interpreted according to the general and popular use of the words employed at the time the statute was passed. See LSA-C.C. art. 11; W.C. Bradford v. City of Shreveport, 305 So.2d 487, 493 (La.1974).[3] Only when a statute is ambiguous and subject to two different interpretations can legislative intent be considered. Adoption of Edwards, 369 So.2d 210 (La.App. 3rd Cir.1979). Since the language of the commercial seafood exemption is ambiguous, this court must determine *870 whether the redactors of the 1974 Constitution intended the definition of seafood for human consumption to include menhaden, and in that determination the constitutional transcripts may properly be considered.
During the Louisiana Constitutional Convention of 1973, the commercial seafood exemption was discussed briefly by delegate Buddy Roemer at 8 Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, at 1906:

Mr. Roemer Right. Then again, on lines 18 and 19, commercial vessels used for gathering seafood for human consumptionI'm assuming we're excluding the menhaden boats, and that sort of thing. Isn't that an addition to this constitution?
Mr. Planchard Yes, that's an additional wording. Right. The above question by delegate Roemer was the only one asked about menhaden in connection with the commercial seafood exemption.
The delegates further expressed their intentions on menhaden when they discussed several amendments to what is now LSA Const. art. 7 § 21(C)(11) (hereinafter referred to as the "inventory exemption").[4] Thus, the meaning intended for the commercial seafood exemption by the redactors of the 1974 Louisiana Constitution can best be gleaned from the following discussion on several amendments to the inventory exemption found at 8 Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, at 1984-1986:
Amendment

Mr. Poynter Amendment No. 1 [by Mr. Nunez]. On page 4, line 7, in Floor Amendment No. 1, proposed by Delegate Munson and adopted by the convention on today, on line 2 of the text after the word "products" and before the word "while" insert the words "and seafood".
* * * * * *

Mr. Segura It's a friendly question. I'm curious. Is menhaden a seafood?

Mr. Nunez Well, we've talked about what seafood isanything that comes out of the sea and they make a meal out of it. Some people eat it; animals eat it; and they make protein out of it; and they make et cetera out of it. I guess you can call it that, if you want to.

Mr. Segura Well, it makes a difference if it falls under this or not. That's why I wanted to know.

Mr. Perez Mr. Nunez, I'm a little bit concerned also about the word "seafood," and I was wondering whether you would be agreeable to withdraw your amendment and add the words "and fish products," as well as seafood?

Mr. Nunez Mr. Chairman, if Mr. Perez has the menhaden industry under there... seafood and ... if we can add fish products to it, I certainly would agree to withdraw the amendment and add fish products to it.
[Motion to withdraw the amendment adopted: 84-3. Amendment withdrawn and resubmitted with correction.]

Mr. Poynter The amendment stays the same. The language will become "and seafood and fish products or by-products".
Explanation

Mr. Nunez Mr. Chairman and ladies and gentlemen of the convention, this certainly would extend it to by-products of fish, which would take in the large menhaden industry that we have, which is justifiable also because it deals with the fisheries industries.
Questions

Mr. Munson Sammy, I have to look at all three amendments. You're now saying *871 "and seafood or fish products." Is that right?

Mr. Nunez "Seafood or fish products or by-products."
* * * * * *
Amendment

Mr. Poynter Amendment No. 1 [by Mrs. Warren], on page 4, line 7, after the word "produce" and before the comma, delete the floor amendment proposed by Mr. Munson and others and adopted by the convention on today including all amendments to said floor amendment which would now include both the Womack amendment and the Nunez amendment, and insert in lieu thereof the following: "and the unrefined products of the first processing of agricultural products and edible seafood while owned by the producer or first producer, provided that such producer does not prepare the product for final sale to the consumer."
* * * * * *

Mr. Perez Mrs. Warren, do you know that I regret to have to ask you this question, but unfortunately if this amendment is adopted do you realize that we would undo what we have already done, because of the fact that you limit this to edible seafood and one of the problems that we have is the fact that we have a menhaden industry which employs hundred of people, and that is not an edible seafood, yet that same material is mixed with corn which is an agricultural products, to produce chicken feed so that what we'd be doing here is saying an agricultural product which goes into chicken feed is exempt but menhaden is not exempt because it is not an edible seafood?

Mrs. Warren Yes, Mr. Perez, but I know what I'm trying to get around to. I'm trying to get around to saving the little people and letting menhaden pay its fair share.
* * * * * *
Further Discussion

Mr. Perez Mr. Chairman and ladies and gentlemen of the convention, I regret that I must rise in opposition to this amendment, because what it would do would be to completely undo that which we have already done. When I asked the first question with respect to the amendment which was adopted with regard to agricultural products, I asked the question with regard to seafood. Now, let me explain to you the fact that we have menhaden industries all along the coastal area of Louisiana, including our parish. Let me further explain to you that these people have been subjected to two of the worst storms in the history of this country... Hurricanes Betsy and Camille in my particular area ... that they are fighting to survive ... that they are in a position where if this amendment is adopted they would have to pay on their inventories but at the same time the multimillion dollar grain elevators which we also have in our parish would be exempt and I just can't understand the reasoning of this and so therefore I ask you ... let's stay with what we have done. If we adopt this amendment what it would do is to undo that which we were trying to do before and that is to protect all the people in the seafood industry, including those seafoods [sic] which are not edible.
* * * * * *
[Previous Questions ordered. Record vote ordered. Amendment adopted: 74-25. Motion to reconsider tabled.][5]
Although the above discussion concerns the inventory exemption, the delegates' statements indicate their intentions on the classification of menhaden.
Exemptions from taxation are to be strictly construed against the person claiming the exemption, and any plausible doubt is fatal. In like manner, an exemption being an exceptional privilege, it must be clearly, unequivocally and affirmatively established. Cajun Electric Power Cooperative, Inc. v. McNamara, 452 So.2d 212, *872 217 (La.App. 1st Cir.), writ denied, 458 So.2d 123-124 (1984).
The statements by the delegates indicate their intent not to include menhaden within a definition of edible seafood. The discussion by the delegates also indicated doubt as to whether they would include menhaden under a definition of seafood at all; rather, it indicated that the delegates would more likely include menhaden under a definition of fish products or by-products.
Although the question as to whether menhaden would be included within a definition of seafood for human consumption was not directly asked or answered, the delegates' statements during the discussion on the inventory exemption reflect that they would not consider menhaden seafood for human consumption. We find nothing in the Convention transcripts that would indicate to us that the delegates intended otherwise when considering the commercial seafood exemption.
Since there is considerable doubt as to whether the delegates intended to include menhaden under the commercial seafood exemption, we cannot say that the trial court erred in its judgment.
For the above and foregoing reasons the judgment of the trial court is affirmed. All costs of this appeal to be paid by the plaintiff.
AFFIRMED.
NOTES
[1] The plaintiff's menhaden fishing vessels which operated out of Terrebonne Parish in 1988 are the object of this dispute.
[2] The following chart is taken from the stipulated facts that the parties introduced at the trial. The chart reflects plaintiff's total sales, fish oil exports, and fish oil exports as a percentage of total sales for the years indicated.

Fiscal Year 9/84 9/85 9/86
Total Sales $108,188,861 $93,326,104 $79,190,846
Fish Oil Exports $38,590,679 $26,048,262 $13,661,860
Fish Oil Exports as a Percentage of Total 35.67% 27.91% 17.25%
Sales
Fiscal Year 9/87 9/88
Total Sales $94,136,578 $91,000,00
Fish Oil Exports $21,060,976 $19,404,461
Fish Oil Exports as a Percentage of Total 22.37% 21.32%
Sales

[3] In W.C. Bradford v. City of Shreveport, 305 So.2d 487 (La.1974), the Court based its discussion on former Civil Code articles 14 and 18. The preliminary title of the Louisiana Civil Code of 1870 was revised by Acts 1987, No. 124. The substance of former Civil Code article 14 is now contained within Civil Code article 11. See official comments to LSA-C.C. art. 11.
[4] Section 21. In addition to the homestead exemption provided for in Section 20 of this Article, the following property and no other shall be exempt from ad valorem taxation:

* * * * * *
(11) agricultural products while owned by the producer, agricultural machinery and other implements used exclusively for agricultural purposes, animals on the farm, and property belonging to an agricultural fair association;...
[5] The inventory exemption was later amended to exclude any reference to seafood, fish products or fish by-products.