WATKINS, Judge.
These consolidated cases are efforts by three corporate taxpayers, which are wholly owned by the same individual, to obtain refunds of taxes paid under protest. Following unsuccessful appearances before the Board of Tax Appeals (Board), the plaintiffs filed suit in the district court. The district court ruled in favor of the State Department of Revenue and Taxation on all three issues.
The issues presented for our determination are:
(1) whether there were business transactions between two or more of the corporations that can be classified as taxable leases for re-lease;
(2) whether the prescriptive period of ten years for a fiduciary or the prescriptive period of three years for a taxpayer applies when a taxpayer makes a good faith error in remitting taxes to the State; and
(3) whether the State can use random sampling as a means of computing taxes due when the taxpayer’s records are unavailable.
LEASE FOR RE-LEASE
Pursuant to an audit the State assessed St. Gabriel Industrial Enterprises, Inc. (St. Gabriel) with $19,724.86 of taxes for alleged “leases for re-lease” of heavy equipment used by industrial customers. The State also assessed Industrial Plant Maintenance, Inc. (Industrial Plant) with $7,449.25 for similar transactions. The plaintiffs claim the transactions were joint ventures or principal-agency transactions and are not taxable.
Aubrey LaPlace, an individual businessman, owns 100% of the stock of five corporations, including the three plaintiff corporations. Through his corporations Mr. La-Place engages in several business enterprises in the petro-chemical corridor along the Mississippi River. His enterprises include the furnishing of materials and rental equipment to various (third party) industrial customers.
One of Mr. LaPlace’s corporations is AJL, Inc., which is not a party to this suit. AJL, Inc. owns certain heavy equipment held for rental purposes. However, AJL, Inc. has no employees or other attributes of autonomy except the formality of a corporate charter. Thus, St. Gabriel and Industrial Plant, not AJL, Inc., were the corporations that had customers and entered into contracts of lease, with them. Taxes on those rentals were paid and are not in dispute here.
When the State audited the corporations for tax purposes, the State labeled the transactions whereby St. Gabriel and Industrial Plant procured the equipment from AJL, Inc. as “leases for re-lease.”
The substance of a transaction, not its form, is controlling for purposes of classifying a transaction as taxable or not. United Companies Printing Company v. Baton Rouge, 569 So.2d 186 (La.App. 1st Cir.1990), writ denied, 572 So.2d 73 (La.1991); Cajun Contractors, Inc. v. State, Department of Revenue and Taxation, 515 So.2d 625 (La.App. 1st Cir.1987).
*1089 The factors which we consider in determining whether a transaction is a sale for re-sale or a lease for re-lease are: how the two businesses are treated for federal taxation purposes; purpose of the subsidiary or service company; which entity employed the workers; and whether the cost of the transferred items included a profit. United Companies Printing Company v. Baton Rouge, supra.
The jurisprudence contains examples of both taxable and non-taxable intercompany transactions.
In United Companies Printing Company v. Baton Rouge, supra, the plaintiff corporation made printed forms. It collected and paid sales tax on all outside sales, which comprised about 40% of its work. The disputed sales tax was assessed on intercompany transfers of printed forms by the manufacturing company to its parent corporation and fellow subsidiary corporations. We held that the alleged sales were not taxable because they were merely in-tercompany transfers which carried no mark-up for profit.
In Cajun Contractors, Inc. v. State, Department of Revenue and Taxation, supra, the questioned transactions were between the plaintiff corporation and a partnership, Cajun Equipment Company (CEC), comprised of the three shareholders of the plaintiff corporation. CEC existed solely for the purpose of purchasing the equipment used by the plaintiff corporation. The transactions were also without profit. We held for the taxpayer, finding that the intercompany transfer was a non-taxable event.
Subsequently, we noted factual distinctions between Cajun and Hilton Hotels Corp. v. Traigle, 360 So.2d 245 (La.App. 1st Cir.1978). Hilton Hotels Inc. had formed Hilton Equipment Company (HEC) to purchase equipment for Hilton on an as-needed basis. The intercompany transactions were taxable because HEC employed and paid its own personnel and because there was a 10% markup in the fully documented transactions between the related companies.
In the instant case, the facts are more analogous to Cajun than to Hilton. The same individual owns all the companies. The only purpose of AJL, Inc. was to own equipment; it had no employees and no customers. Customer contact and customer relations were the function of St. Gabriel and Industrial Plant, and they were the corporations that leased out the equipment. The alleged leases between AJL, Inc. and the two plaintiff corporations were mere bookkeeping transfers in the accounts of the common owner; there was no markup for profit. St. Gabriel and Industrial Plant never procured the equipment, as a true lessee would, for its own control and use.
Accordingly, we conclude that the trial court erred as a matter of law (see United Companies Printing Company v. Baton Rouge, supra) in denying St. Gabriel and Industrial Plant refunds for the taxes and interest paid under protest on the intercom-pany transactions.[1]
PRESCRIPTION
The second issue is raised by an assessment against St. Gabriel and Industrial Fill Materials, Inc. made after the auditor disallowed advance tax credits[2] which the two companies had claimed. The State argues that prescription of 10 years applies because the total amount of taxes owed by the two plaintiffs was not remitted to the State. Specifically, the disallowance of the advance tax credit resulted in a 5.6% deficit in the amount of taxes remitted.[3] Plaintiffs argue that the collection of *1090 the tax deficiency is barred by three-year prescription for the tax years 1978 through 1984.
Resolution of the prescription issue involves the proper interpretation of our opinion in Sabine Pipe & Supply v. McNamara, 411 So.2d 1167 (La.App. 1st Cir.), writ denied, 414 So.2d 1254 (La.1982). In that case the plaintiff company was a Texas corporation engaged in the retail business of selling oilfield equipment and supplies. Sabine Pipe & Supply Company (Sabine) had collected monies for sales or use taxes from Louisiana customers, but Sabine never remitted the taxes to the State of Louisiana. We held that the three-year prescriptive period of Article 7, Section 16 of the Louisiana Constitution of 1974 and Article 19, Section 19 of the Louisiana Constitution of 1921 did not apply. Noting that the case was “not a suit against the taxpayer to collect taxes,” we applied instead the 10-year prescriptive period applicable to a fiduciary.
Plaintiffs argue that an important factual difference exists between the situation in which a corporation, such as Sabine, knowingly and intentionally collects a tax but does not remit and the case of taxpayers, such as plaintiffs, who in good faith miscalculate the amount of taxes. Indeed, not only are the equities in favor of the latter, but the difference in status of the two requires application of different rules of prescription. The plaintiffs in the instant case are Louisiana taxpayers, not mere fiduciaries. As taxpayers they are entitled to invoke the three-year prescriptive period for taxes provided by the Louisiana Constitution. Plaintiffs’ status as taxpayers is evidenced by the fact that the miscalculation of the amount which plaintiffs remitted to the State occurred in the calculation of an advance tax credit. Taxpayers, not fiduciaries, claim tax credits.
Suffice it to say that were we to extend the holding of Sabine to cases such as the instant one, as the State urges, we would render nugatory for a large segment of business taxpayers the three-year prescriptive period provided by the constitution.
Accordingly, we find that the alleged tax liability of St. Gabriel for the years 1978 through 1984 and the alleged tax liability of Industrial Fill for the years 1983 and 1984 have prescribed. Those two plaintiffs are entitled to refunds of $6,451.00 and $8,667.17 respectively.
“ERROR RATE” ASSESSMENT
The remaining assessment is for $782.39 for the year 1985 against St. Gabriel. The State admits that it cannot show through its audit specific transactions for which the assessed amount is actually due and owing. Instead, as conceded by the State, the State “projected” the assessment according to a “rate of error” it uncovered elsewhere. The projection, according to the testimony of the State’s auditor, was used only when there was an absence of taxpayer’s records. The auditor explained that where records were provided, he did a “one hundred percent” audit. Only in the absence of records was the error rate used to project a figure for the taxes owed to the State.
We find no error in the trial court’s refusal to allow the taxpayer a refund on the grounds that the procedure used by the state auditors was an unauthorized procedure. We cannot say that the “error rate” method of projecting taxes is prohibited in cases where the taxpayer has been unable to provide the state with the required documentation. The taxpayer’s argument that the “error rate” method was rejected by the legislature is not convincing. Although the legislature failed to adopt proposed legislation to sanction the method, it did not prohibit the use of the method.
Accordingly, we affirm the trial court's decision that St. Gabriel is not entitled to a refund for the “error rate” assessment for 1985, but we otherwise reverse. We will allow St. Gabriel a refund of $40,269.39 less $782.39 and the interest on $782.39 which it has paid under protest. We award *1091 to Industrial Fill and Industrial Plant the refunds they sought, plus the interest they paid. We cast the State Department of Taxation and Revenue with the costs of this appeal in the amount of $782.63.
REVERSED IN PART, AFFIRMED IN PART.

.According to the itemization provided us in plaintiffs’ brief, St. Gabriel was assessed with $19,724.86, plus interest, for the intercompany transactions: Industrial Plant was assessed with $7,449.25 for the transactions, plus $2,309.69 interest, for a total of $9,758.94.

. An advance tax credit is one of the elements in the formula a Louisiana business uses in calculating the amount of taxes it owes.

. At oral argument counsel for plaintiffs broached the subject of whether the State’s dis-allowance of the tax credits was correct, pointing out that the trial court’s reasons for judgment were silent on the subject. However, *1090 plaintiffs neither assigned as error the lack of a specific finding nor briefed the issue of plaintiffs' entitlement to the tax credits. According-Iy, we consider the issue abandoned. See Uniform Rules, Courts of Appeal, Rule 2-12.4.