|2PARRO, J.
Local taxing authorities appeal a trial court’s judgment, ordering them to refund sales taxes paid under protest by the seller and purchaser of certain video draw poker devices.
FACTUAL AND PROCEDURAL HISTORY
The facts of this case are not in dispute. During July and August 1993, A.M.A. Distributors, Inc. (AMA) sold and delivered several video draw poker devices to Tiger Truck Stop, Inc. (Tiger) for use in Tiger’s location in Iberville Parish. These retail sales transactions took place in Iberville Parish and totaled $99,960. Although the applicable local sales and use tax rate in Iberville Parish is 3-2/3%, AMA did not collect sales taxes from Tiger on the sales, nor did either of them remit such taxes to the Iberville Parish Police Jury and Iberville Parish School Board.
On March 20, 1996, Iberville Parish, through its Sales and Use Tax Department, issued a notice of assessment to AMA, claiming AMA owed $3,665.53 for sales taxes on the transactions, plus penalties of $916.38 and interest in the amount of $1,412.81. On September 19, 1996, AMA paid the assessment under protest and joined with Tiger in filing this suit for a refund. The suit named as defendants the School Board of the Parish of Iberville, Charles Bujol as Treasurer of the School Board of the Parish of Iberville, the Police Jury of the Parish of Iberville, Betty Barber as Secretary of the Police Jury of the Parish of Iberville, the Iberville Parish Sales and Use Tax Department, Fidelis Ok-oye as Director of the Ibérville Parish Sales and Use Tax Department, and Freddie H. Pitre, the Iberville Parish Sheriff and Ex Officio Tax Collector[1] (collectively, Iberville Parish). Iberville Parish reconvened for the taxes, penalties, and interest, plus statutory attorney fees, and then filed a motion for partial summary judgment on the taxes, penalties, and interest.[2] AMA and Tiger (the taxpayers) also moved for summary | ajudgment, claiming video draw poker devices were exempt from local sales taxes. After a hearing, the trial court granted summary judgment in favor of the taxpayers, and denied Iberville Parish’s motion for partial summary judgment. The judgment was signed on March 21, 1997. This appeal followed. The only issue in this appeal is whether retail sales of video draw poker devices are exempt from parish sales taxes.
APPLICABLE LAW
It is undisputed that the power of taxation resides in the state legislature, except as otherwise provided in the constitution. LSA-Const. art. VII, § 1(A).[3] With *767 respect to taxation, local governments possess only those powers granted to them by the state constitution or statutes. Caddo-Shreveport Sales and Use Tax Com’n v. Office of Motor Vehicles Through Dept. of Public Safety and Corrections, 97-2233 (La.4/14/98), 710 So.2d 776, 779; Radiofone, Inc. v. City of New Orleans, 93-0962 (La.1/14/94), 630 So.2d 694, 696. In Article VI, § 29(A), the Louisiana Constitution authorizes local taxing authorities to “levy and collect a tax upon the sale at retail ... of tangible personal property_” [4] LSA-R.S. 33:2721(A) authorizes the sales taxes levied by Iberville Parish in the instant case. It provides, in pertinent part:
The respective governing bodies of the parishes of ... Iberville ... are hereby authorized to levy and collect within each such parish a tax ... upon the sale at retail ... of tangible personal property ... as presently defined in R.S. 47:301 through 47:317, inclusive.
See also LSA-R.S. 33:2721.6(A). LSA-R.S. 47:302(A) levies a tax “upon the sale at retail ... of each item or article of tangible personal property_” For purposes of the imposition of sales and use taxes levied by a political subdivision or school board, “retail sale” or “sale at retail” shall mean a sale to a consumer or to any other person for any purpose other than for resale as tangible personal property. LSA-R.S. 47:301(10)(a)(ii).
The purpose of a state sales and use tax scheme is to make the sale or use of all tangible personal property subject to a uniform tax burden, regardless of whether it is Uacquired inside the state and subject to a sales tax or acquired outside the state and subject to a use tax. See J. Ray McDermott, Inc. v. Morrison, 96-2337 (La.App. 1st Cir.11/7/97), 705 So.2d 195, 200, writs denied, 97-3055, 97-3062 (La.2/13/98), 709 So.2d 753, 754. A sales or use tax is not imposed on the tangible personal property itself, but rather, on an event incident to its introduction into commerce or its initial use. See Southwest Gaming Services of Louisiana v. Caddo-Shreveport Sales and Use Tax Com’n, 27,335, 27,336 (La.App. 2nd Cir.9/27/95), 661 So.2d 662, 663, writs denied, 95-2546, 95-2578 (La.1/5/96), 666 So.2d 294. Unlike a license tax, which is a regulatory device imposed on a party for the privilege of pursuing a business, occupation, or profession, a sales tax is levied upon each transaction as it is made and is paid by the purchaser, user, or consumer. Mouledoux v. Maestri, 197 La. 526, 2 So.2d 11, 17-18 (1941). Sales and use taxes are considered to affect the privilege of selling or purchasing, using or consuming the tangible personal property. Reed v. City of New Orleans, 593 So.2d 368, 371 (La.1992).
 Exemptions from taxation must be expressly and clearly conferred and are to be strictly construed against the taxpayer. Succession of Smith, 589 So.2d 16, 18 (La.App. 1st Cir.1991), writ denied, 594 So.2d 891 (La.1992); McNamara v. Central Marine Serv., Inc., 507 So.2d 207, 208 (La.1987). The taxpayer claiming an exemption has a heavy burden to prove his entitlement. An exemption is an exceptional privilege, which must be clearly, unequivocally, and affirmatively established. Zapata Haynie Corp. v. Larpenter, 583 So.2d 867, 871 (La.App. 1st Cir.), writ denied, 589 So.2d 1071 (La.1991); Bill Roberts Inc. v. McNamara, 539 So.2d 1226, 1229 (La.1989).
A number of statutes create exclusions or exemptions from the sales and use tax by specifically stating that the exemption is from the sale or use of certain described property, or from the tax created by LSA-R.S. 47:301 and 302. See LSA-R.S. 47:305 through 305.51; Southwest Gaming Services, 661 So.2d at 664 (Norris, J., concurring). Additionally, LSA-R.S. 47:301 creates additional exemptions or exclusions by removing certain entities from the definition of the “person” upon whom such taxes may be imposed, or by specifying that certain transactions are not included in the definition of ls“sale at retail.” See, e.g., LSA-R.S. 47:301(8)(b) (“person” does not include certain regionally accredited independent institutions of higher education when the transac *768 tions are directly related to their educational mission), LSA-R.S. 47:301(10)(d) (“sale at retail” does not include the sale of any human tissue for transplants), and LSA-R.S. 47:301(10)(q)(I) (“sale at retail” does not include the sale of tangible personal property by certain approved parochial and private elementary and secondary schools, their students, or their employees, when the money from such sales is used solely to support those schools).
ANALYSIS
In ruling that the transactions involved in this case were exempt from taxation by Iberville Parish, the trial court relied on LSA-R.S. 27:314, which states:
Video draw poker devices or similar devices licensed and permitted pursuant to this Chapter are exempt from taxes, fees, and licensing restrictions imposed by any governmental entity, except that a local governing authority may levy an occupational license tax on the operation of video draw poker devices within its jurisdiction in an amount not to exceed fifty dollars per device.[5]
To ascertain whether the trial court was legally correct in exempting sales of video draw poker devices from Iberville Parish sales taxes, we must examine the language of this provision to determine whether it clearly, unequivocally, and affirmatively exempts the transactions at issue from such taxes. This statute states that video draw poker devices are exempt from taxes, fees, and licensing restrictions imposed by any governmental entity. While on its face this wording appears straightforward and inclusive, it is noticeably different from the narrowly-drawn, particularized language used by the legislature in defining exemptions from sales and use taxes in Title 47 of the Louisiana Revised Statutes. Those exemptions are very specific as to their objective; they clearly state that they are intended to provide exemptions from sales and use taxes, or else they refer back to the taxes created by LSA-R.S. 47:301 and 302. This statute, in contrast, does not clearly state that the exemption is applicable to sales and use taxes.
| ^Additionally, the language of LSA-R.S. 27:314 indicates that certain items of property, in particular, “video draw poker devices or similar devices,” are exempt from taxes. However, sales and use taxes are not taxes on property, but are transaction taxes. Therefore, the statutes creating exemptions to sales and use taxes employ language defining the exemptions in relation to the activities of selling, using, leasing, consuming, distributing, storing, or purchasing, rather than stating those exemptions in relation to the item, product, thing, or enterprise. Put another way, the exemptions to sales and use taxes are stated in terms of exempting a transaction or activity from the tax. Unlike those clearly stated exemptions, LSA-R.S. 27:314 states the exemption in terms of a particular kind or item of property.
Yet, despite the language of the statute, which seemingly exempts certain types of property from taxes, but does not clearly exempt the transaction by which ownership of those items is transferred, the Attorney General opined that this statute did not exempt video draw poker devices from local property taxes, but did exempt them from local sales and use taxes. 93 Op. Att’y Gen. No. 186 (March 22, 1993).[6] However, the Second Circuit, in the Southwest Gaming case, held that this statutory language did not exempt retail sales of video draw poker devices from parish sales taxes. See Southwest Gaming, 661 So.2d 662. Given this contrary interpretation of the statutory language by our colleagues in the Second Circuit, the exemption provided by this statute can hardly be considered clear and unequivocal.
Additionally, we note that the statutes levying sales and use taxes and exempting certain transactions from those taxes are defined and enumerated in Title 47 of the Louisiana Revised Statutes, entitled “Reve *769 nue and Taxation,” and are within the subsection entitled “Sales Tax.” However, LSA-R.S. 27:314 is included in Title 27 of the Louisiana Revised Statutes, the “Louisiana Gaming Control Law.”[7] The purpose of these gaming statutes is to strictly regulate all persons, locations, practices, l7associations, and activities related to the operation of licensed and qualified gaming establishments and the manufacture, supply, or distribution of gaming devices and equipment, in order to protect the general welfare and prevent criminal and corrupt elements. LSA-R .S. 27:2(A). Under the statutory scheme, the state, not local authorities, regulates and controls gaming by imposing a complex set of strict licensing, permitting, and inspection procedures affecting all aspects of gaming enterprises and the persons and entities seeking the privilege of engaging in the gaming business. The placement of the above provision, initially in the section of laws dealing with the exercise of police power, and now in Title 27, strongly suggests that it forms some part of the state’s regulatory scheme affecting gaming, rather than adding to the specifically enumerated transactions which are exempted from sales and use taxes under Title 47. See Southwest Gaming, 661 So.2d at 663.
We conclude that the language of the statute relied upon by the trial court does not clearly, unequivocally, and affirmatively exempt transactions involving video draw poker devices from sales and use taxes levied by local governmental authorities. Accordingly, the judgment of the trial court, granting the taxpayers’ motion for summary judgment, must be reversed. The motion for partial summary judgment, filed by Iberville Parish, must be granted.[8] Iberville Parish reserved the issue of statutory attorney fees and did not present that claim to the trial court in its motion for partial summary judgment. Therefore, we will remand this matter to the trial court for further proceedings on this remaining issue.
CONCLUSION
The judgment of the trial court is reversed. The taxpayers’ motion for summary judgment is denied and their case is dismissed, with prejudice. Judgment is rendered in favor of Iberville Parish on its motion for partial summary judgment, and against the taxpayers, for sales taxes in the amount of $3,665.53, penalties in the amount of $916.38, and interest as of March 20, 1996, in the amount of $1,412.31. The matter is |8remanded to the trial court for further proceedings in accord with this opinion. All costs of this appeal are assessed against the taxpayers.
REVERSED AND RENDERED IN PART; REMANDED IN PART.

. Because the Sheriff of Iberville Parish has no jurisdiction over sales and use tax matters, he was later dismissed from the suit on joint motion of the parties.

. Counsel for Iberville Parish explained to the trial court that he did not Include the request for statutory attorney fees in the motion for partial summary judgment because, in his experience, such a request could create an issue of material fact, aside from the legal merits of the substantive issue in the case.

.Section 1 of Article VII was amended by a vote of the electorate on October 3, 1998, ratifying a proposal to amend put forth in 1997 La. Acts No. 1493, § 1. The substance of the cited provision did not change as a result of the amendment.

. Section 29 of Article VI was also amended after the sales at issue in this case occurred, pursuant to a vote of the electorate ratifying 1996 La. Acts No. 46, § 1. That amendment, effective Decem-her 11, 1996, also did not change the substance of the cited provision.

. This statute was formerly designated as LSA-R.S. 33:4862.14. It was re-designated as R.S. 27:314 in 1996, pursuant to 1996 La. Acts No. 7, § 3, 1st Ex.Sess.

. This Attorney General’s opinion, like the Southwest Gaming decision, refers to the statute by its former designation, LSA-R.S. 33:4862.14.

. Before re-designation, these same provisions were included in Chapter 14 of Title 33, which covers the exercise of police power, and were enacted by 1991 La. Acts No. 1062, § 1.

. We note that the provisions addressing the finality of a partial summary judgment in LSA-C.C.P. art. 1915(B), do not limit this court’s ability to grant a partial summary judgment in a matter which is properly before us. LSA-C.C.P. art. 2164. Moreover, the current version of LSA-C.C.P. art. 1915 did not become effective until July 1, 1997, which was after the March 21, 1997 judgment in this case.