775 So.2d 1148 (2000)
J & B PUBLISHING COMPANY OF LOUISIANA, INC., Plaintiff-Appellant,
v.
SECRETARY, DEPARTMENT OF REVENUE & TAXATION, STATE OF LOUISIANA, Defendant-Appellee.
No. 34,105-CA.
Court of Appeal of Louisiana, Second Circuit.
December 15, 2000.
*1149 Theus, Grisham, Davis & Leigh by Robert J. Bozeman, Monroe, Counsel for Appellant.
Louisiana Department of Revenue, Legal Division by Dwana C. King, Baton Rouge, Frederick Mulhearn, Counsel for Appellee.
Before BROWN, PEATROSS and DREW, JJ.
*1150 BROWN, J.
J & B Publishing Company of Louisiana ("J & B") appeals from a trial court's judgment holding it liable for sales and use taxes on purchases of (1) printing services from an out-of-state printer; (2) a license to obtain and use residential telephone listings from South Central Bell; and (3) a printout of those listings from Century Printing and Direct Micromarketing. In addition to the sales and use tax assessments, the trial court imposed penalties. For the reasons set forth below, we affirm in part and reverse in part.

Facts
The facts are fairly simple and not in dispute. J & B has published an independent telephone directory for the northeast region of Louisiana for the past 18 years. The telephone book contains both residential listings (white pages) and business listings/advertisements (yellow pages). J & B's art department designs most of the ads that J & B sells.
J & B purchases from South Central Bell the residential "white page" listings, or, more accurately, a license to use these listings. J & B then purchases a printout of the residential listings from Century Printing and Direct Micromarketing ("Century Printing"). The telephone directories are printed and bound by the Printing Center, Inc., a Fort Worth, Texas, corporation. The finished books are then shipped to J & B's warehouse in Monroe, Louisiana, from which location J & B distributes the directories free-of-charge to the public. Approximately 135,000 telephone books are printed per year and distributed each November. All of J & B's revenue is generated by the sales of advertisements for the yellow pages.
The sales of the yellow page advertisements are not subject to taxation because the applicable statute specifically exempts advertising services rendered by an advertising business. La. R.S. 47:302(D). At issue in the instant case is the imposition of a use tax on the printing and binding of the directories and sales tax on the purchase and printing of the residential listings.
For the audit period of January 1, 1992, through October 30, 1994, the Dept. of Revenue assessed J & B with sales and use taxes totaling $17,355.14. The majority of this amount, $15,580.27, was assessed on the printing and binding services provided by the Texas company. Of the remaining amount, $961.16 was assessed on J & B's purchase of the printout of residential listings from Century Printing and $513.97 was assessed on J & B's purchase of the license granting access to the residential listings from South Central Bell. The Dept. of Revenue calculated penalties of $2,863.07 and interest of $3,525.13 as of April 24, 1995, on the assessments.

The Tax Board's Ruling
J & B appealed the assessments to the Board of Tax Appeals pursuant to La. R.S. 47:1401 et seq. After a hearing on March 4, 1997, the three-member panel dismissed the three assessments at issue by judgment dated August 5, 1997. The Board based its dismissal of the assessment on the out-of-state printing of the directories upon La. R.S. 47:302(D), which exempts from taxation advertising services rendered by an advertising business. While the Board cited no specific statutory authority for its dismissal of the other two assessments, it is reasonable to conclude that the panel determined that the exemption provided by La. R.S. 47:302(D) applied to these transactions as well.
On August 21, 1997, the Dept. of Revenue filed a timely petition for judicial review of the Board's decision. A hearing was held in district court on December 30, 1999.

The District Court's Ruling
The trial court held that the printing services J & B purchased from the Printing Center were clearly distinguishable from the advertising services J & B sold to its customers; that the right to obtain a printout of the listings by the license *1151 agreement was inseparable from the physical manifestation of the listings, that is, the magnetic tape, and therefore constituted tangible personal property subject to taxation; and, that the printout provided by Century Printing of the residential listings constituted a taxable sale of services as defined by La. R.S. 47:302(D). Thus, the trial court reinstated the assessments and penalties.
J & B has appealed from the trial court's judgment.

Discussion
Retail sales of tangible personal property in Louisiana are subject to a sales tax. It is a tax upon the transaction itself, not the property involved in the transaction. The use tax was intended to affect items purchased out-of-state for immediate importation and use in this state. A use tax in the amount equal to what would have been levied as a sales tax is ordinarily imposed upon a Louisiana resident who purchases goods or services out-of-state. Obviously, the purpose of the use tax is to remove the temptation to buy out-of-state to escape the payment of local sales taxes. Accordingly, if something that is purchased out-of-state would be subject to a sales tax if purchased in state, then it is subject to a use tax. The two taxes are complimentary and codified as a single sales and use tax. La. R.S. 47:301 et. seq.
We are mindful of the limitations on judicial review;[1] however, there are no factual disputes in this matter. The central issue is one of statutory interpretation and application: whether the purchase of printing and binding services from an out-of-state printer, as well as the purchase of residential listings in state, are exempt from the assessment of a use or sales tax by virtue of either La. R.S. 47:302(D) (as an advertising service) or La. R.S. 47:301(10)(a)(i) (as a sale for resale).
Exemptions from taxation must be expressly and clearly conferred and are to be strictly construed against the taxpayer. McNamara v. Central Marine Service, Inc., 507 So.2d 207 (La.1987); A.M.A. Distributors, Inc. v. School Board of Parish of Iberville, 98-0373 (La.App. 1st Cir.04/01/99), 729 So.2d 765; Succession of Smith, 589 So.2d 16 (La.App. 1st Cir.1991), writ denied, 594 So.2d 891 (La.1992). The taxpayer claiming an exemption has a heavy burden to prove his entitlement. An exemption is an exceptional privilege which must be clearly, unequivocally and affirmatively established. Bill Roberts, Inc. v. McNamara, 539 So.2d 1226 (La. 1989); Zapata Haynie Corp. v. Larpenter, 583 So.2d 867 (La.App. 1st Cir.1991), writ denied, 589 So.2d 1071 (La.1991); Gard Ltd. Liability Co. v. Calcasieu Parish School Board, 96-1520 (La.App. 3d Cir.04/02/97), 693 So.2d 10; Cox Cable New Orleans, Inc. v. City of New Orleans, 94-2102 (La.App. 4th Cir.11/16/95), 664 So.2d 742, on reh'g in part, writ denied, 96-0203 (La.02/28/96), 668 So.2d 364, writ denied, 95-3032 (La.02/28/96), 668 So.2d 365; Greater New Orleans Expressway Commission v. Board of Tax Appeals, 96-239 (La.App. 5th Cir.09/18/96), 681 So.2d 957.

Advertising Services Exemption
Section 302(A)(2) of Title 47 provides for the assessment of a tax upon the sale at retail, use, consumption, distribution and storage for use or consumption in this state, of each item or article of tangible personal property based upon the cost price of each item or article of tangible personal property when the same is not sold but is used, consumed, distributed or stored for use or consumption in this state.
*1152 There is no dispute that the telephone books are tangible personal property used or consumed in this state. The Board of Tax Appeals found that § 302(D) provided an exemption for the printing and binding costs of the directories. Subsection (D) of La. R.S. 47:302 provides in pertinent part:
Notwithstanding any other provision of law to the contrary, no state sales or use tax nor any such tax levied by a political subdivision shall be levied on any advertising service rendered by an advertising business, including but not limited to advertising agencies, design firms, and print and broadcast media, or any member, agent or employee thereof, to any client whether or not such service also involves a transfer to the client of tangible personal property. (Emphasis added).
The exemption applies to "an advertising service rendered by an advertising business ... to any client ... whether or not such service also includes a transfer to the client of tangible personal property." The district court disagreed with the Tax Board's determination that the exemption provided by § 302(D) covered the cost of printing and binding that J & B paid to the Texas printer, noting that the Printing Center is not an advertising business, nor is the service it provided to J & B an advertising service.
J & B argues that the printing and binding of the telephone directories are an integral part of the advertising service it provides to its customers and is therefore an advertising service. We disagree. The substance of a transaction, not its form, is controlling for purposes of classifying a transaction as taxable or not. United Companies Printing Co. v. Baton Rouge, 569 So.2d 186 (La.App. 1st Cir.1990), writ denied, 572 So.2d 73 (La.1991); St. Gabriel Industrial Enterprises, Inc. v. Broussard, 602 So.2d 1087 (La.App. 1st Cir.1992). The services provided by the Printing Center were not sales of advertising services, i.e., the sale of advertising space and creative services. Rather, the out-of-state print company provided printing and binding services which it sold to J & B.[2] For the same reasons, the exemption also does not apply to the license to obtain the white page listings or the printout of those listings. The trial court correctly found inapplicable the exemption for advertising services provided by La. R.S. 47:302(D).

Sale for Resale Exemption
J & B also asserts that the purchase of the printing and binding services constituted a "sale for resale." There is no definition of "sale for resale" in the sales and use tax statute. La. R.S. 47:301(10)(a)(i), however, defines "retail sale" as follows:
For the purposes of the imposition of the state sales and use tax, "retail sale" or "sale at retail" means a sale to a consumer or to any other person for any purpose other than for resale as tangible personal property....
Thus, purchases made in this state are not subject to an advance sales tax when the buyer sells the tangible personal property to another party rather than using or consuming the property himself as an end user.
According to J & B, the transactions at issue are not subject to taxation because they are actually sales for resale. The flaw in this "sale for resale" argument is that the law anticipates the collection of the tax when the item is sold at retail to the ultimate consumer. In this case J & B actually consumed the property and was the ultimate end user.
*1153 We find that where a business purchases goods to be used in furnishing a traditional service to its customers, the purchases are not for resale and sales taxes are imposed upon the business-purchaser. However, when there is a showing that the goods initially purchased by the business are not ordinarily furnished in the traditional course of providing a service and there is a showing that the goods are resold to the ultimate consumer, the business is not required to pay sales tax.
In Helmsley Enterprises v. Tax Appeals Tribunal of the State of New York, 187 A.D.2d 64, 592 N.Y.S.2d 851 (1993), the court considered the imposition of a sales tax on purchases by the hotel of furniture, towels and sheets, soap and stationery, which were placed in the guest rooms of the hotel. The hotel sought to avoid payment of the sales tax on these items. The court found that the placing of these items in the guest rooms is inseparably connected to the petitioner's essential business of serving the comfort and convenience of its guests. Therefore, furnishing these items to guests could not be considered separate transactions for sales tax purposes.
Similarly, in Sine v. State Tax Commission of Utah, 15 Utah 2d 214, 390 P.2d 130 (1964), the court considered the imposition of sales tax upon a hotel for its purchase of linen, towels, mattress covers, blankets, soap, postcards, drinking glass covers, toilet bands, stationery and magazines. The court found that the hotel is the ultimate consumer of these items and under the letter and spirit of the applicable use tax act was required to pay tax on the purchase of these items.
In City of Shreveport v. Kleowdis, 408 So.2d 956 (La.App. 2d Cir.1981), this court considered the issue of whether dentists were required to pay sales tax when purchasing dental prosthetic devices from dental laboratories. The dentists claimed they were not the consumers of the devices, but resold them to their patients at retail. This court rejected the argument of the dentists and found that the devices were not resold to the patients, but were included in the rendition of professional services. Therefore, the dentists were required to pay sales tax when purchasing the prosthetic devices.
In Collector of Revenue v. J.L. Richardson Company, 247 So.2d 151 (La.App. 4th Cir.), writ denied, 258 La. 915, 248 So.2d 586 (1971), the defendant, a catering company, prepared and served meals to oil company employees who were working on offshore drilling rigs. The issue was whether the defendant was liable for sales tax on merchandise, food and housekeeping equipment purchased from various vendors. The court found that the defendant purchased the food for use in fulfillment of its catering service contract with the oil company to provide meals for its employees. The items purchased by the defendant were not resold to the oil company employees. The defendant was providing a service of furnishing meals under its contract. Therefore, the defendant was required to pay sales tax on the initial purchases.
This view comports with our holding in S & R Hotels v. Fitch, 25,690 (La.App.2d Cir.03/30/94), 634 So.2d 922.

Residential Telephone Listings
The Dept. of Revenue also assessed J & B for its purchase of a license from South Central Bell and a printout from Century Printing.
With respect to the printout of the magnetic tape provided by Century Printing, the district court correctly concluded that the tax imposed by La. R.S. 47:302(C) was applicable. Section 301(14)(d) defines the sale of services to include printing or other similar services.
We also find that the court correctly held that the sale of the license for access to the residential listings was a sale of tangible personal property. In South Central Bell Telephone Co. v. Barthelemy, 94-C-0499, (La. 10/17/94), 643 So.2d 1240, 1249, the supreme court stated:

*1154 We reject Bell's argument that what was purchased was the license or right to use the computer software, and that such license is intangible. In Saenger Realty Corp. v. Grosjean, 194 La. 470, 193 So. 710 (1940), which involved taxation of the rental of motion pictures, we rejected the taxpayer's argument that the right or license to exhibit copyrighted films was intangible. Adopting the reasoning from a New York case, we stated that "`[t]he transaction which is the subject of the tax under review consists of the transfer by the distributor to the exhibitor of the possession of corporeal property in the form of positive and negative prints of photoplays with the license to use or exhibit them for a specified time. The license to exhibit without the transfer of possession would be valueless.'" 193 So. at 712 (quoting United Artists Corp. v. Taylor, 273 N.Y. 334, 341, 7 N.E.2d 254, 256 (1937)). Hence, we found that the license to exhibit the films was inseparable from the tangible film prints. Likewise, the license to use the software, without transferring the software, would be of no use to Bell, and the license to use the software is inseparable from the physical manifestation of the software in recorded form.

Penalties and Interest
Finally, J & B urges that if this court upholds the district court's reinstatement of the tax assessments, it should nonetheless not be ordered to pay penalties and interest.
Considering the number of years during which the Department of Revenue made no effort to collect the taxes involved, together with the uncertainty of the applicability of the laws to J & B's process, we believe that the imposition of penalties for failure to voluntarily pay would be unjust and should not be assessed. See McNamara v. Stauffer Chemical Co., 506 So.2d 1252 (La.App. 1st Cir.), writ denied, 512 So.2d 454 (La.1987). We are unaware of any legal authority which would allow for the abatement of interest on tax sums held to be due. Accordingly, we find that J & B is responsible for payment of the assessments as well as legal interest thereon.

CONCLUSION
For the reasons set forth above, the district court's judgment is affirmed in all respects except for that portion which assessed penalties on the tax sums due; that portion of the judgment is hereby reversed. Costs are assessed to plaintiff-appellant, J & B Publishing Company of Louisiana.
DREW, J., concurs in part and dissents in part with written reasons.
DREW, J., concurring in part and dissenting in part.
Although I agree with much of the result reached by the learned majority, I respectfully dissent from that portion of the opinion affirming the assessment of interest and all costs. The cold hard truth is that the Department sat on this case for years, and until today, no one knew for sure whether or not the tax actually applied.
Therefore, I would much prefer to eliminate both penalties and interest out of fundamental fairness. Further, because of the delays of the state, and the uncertainty of applicability of these taxes, I would also evenly split the costs between the parties.
This small business, operating in good faith, was singled out as a "guinea pig" for possible collectable taxes previously overlooked by the bureaucracy.
NOTES
[1] Judicial review of a decision of the Board of Tax Appeals is based upon the facts in the record before the Board and questions of law. The Board's findings of fact should be accepted when they are supported by substantial evidence in the record and should not be set aside unless they are manifestly erroneous. St. Pierre's Fabrication & Welding, Inc. v. McNamara, 495 So.2d 1295 (La.1986); Lowe's Home Center, Inc. v. Kennedy, 32,443 (La.App.2d Cir.10/27/99), 744 So.2d 711.
[2] Although there are no Louisiana cases on point, the same argument that J & B is asserting was rejected by courts in Missouri and New Jersey. See Travelhost of Ozark Mountain Country v. Director of Revenue, 785 S.W.2d 541 (Mo. En banc 1990); Princeton Community Phone Book, Inc. v. Director, Division of Taxation, 145 N.J.Super. 589, 368 A.2d 933 (1976).